Marie Rothschild, Appellant, v. Carl Barck.—26 S. W. (2d) 760.

Division Two, April 7, 1930.

1122

*Earl M. Pirkey* for appellant.

*Woodward & Evans* for respondent.

WHITE, J.—The defendant was a physician and the plaintiff was his patient. In November, 1923, he performed an operation upon her right eye to remove cataract. After the operation her eye became infected and her eyesight, already almost gone on account of the cataract, was not restored. She brought this suit September 20, 1924, to recover damages caused by defendant's alleged negligence and lack of skill in connection with the operation.

The allegations of negligence are that the defendant unnecessarily cut and incised and punctured the parts adjoining the crystalline lens, and negligently failed to cleanse or have cleansed and sterilized his hands and instruments used in the operation, and negligently failed to cleanse or have cleansed the eye, eyelids, eyelashes and other parts adjoining the said eye or the rest of her face, either before or after said operation.

The answer of the defendant admitted the relation of patient and physician, the operation, the infection which followed the operation, denied that defendant was negligent in any manner in handling the case, and alleged that the operation and treatment were in accordance with the accepted medical knowledge, learning and skill.

Both eyes of the plaintiff were infected with cataract. On the right eye the cataract was "ripe," which means ready for the operation; on the left eye it was not ripe. Afterwards the left eye was operated upon successfully by another physician.

The plaintiff's testimony of the defendant's negligence was largely negative. She did not see him cleanse and scrub his hands. Defend-

ant and Dr. Ehresmann, his assistant, testified to the sterilization of the instruments, their hands, and the washing of the plaintiff's face and eye with boric acid, and other treatment.

The defendant, also, offered evidence to show that absolute sterility of the conjunctiva sac was impossible. That certain germs, the names of which appear in the record, are always present in a normal eye, and it is not possible always to eradicate them for the purpose of such operation. Defendant also offered evidence to show that one to three per cent of operations for cataract fail on account of subsequent infection. Dr. Barck had graduated at Freiburg, Germany, in 1880, came to this country in 1883, had been practicing in St. Louis since that time. He had been lecturer on ophthmalogy at the St. Louis University; he had been back to Europe several times and visited the universities and clinics of London, Utrecht, Paris, Budapest, and many in Germany. Since St. John's Hospital was built in 1912 he had performed 350 operations. Of those 150 were cataract operations, and of the 150 in only one did infection take place, and that was this case. He explained at length all his precautions to prevent infection. He first examined the patient to find out if she was in a normal state of good health. He said "she was a poor patient; she didn't keep quiet, and didn't look down nicely," which it seems is necessary in an operation of that kind.

Several other physicians testified for the defendant that the method which he pursued in the case was an approved method.

The plaintiff introduced only one physician as a witness. He was a general practitioner and knew very little about the eye or operations for cataract. On this evidence the jury returned a verdict for defendant, judgment followed and the plaintiff appealed.

I. The appellant assigns error to the action of the trial court in overruling her challenge to juror number 15, on the ground that he was prejudiced and incompetent to sit. Juror 15 had been employed in some capacity by the United States Fidelity & Guaranty Company, a life insurance company. He testified on *voir dire* that he had a good deal of personal injury work to look after; that he sometimes settled personal injury claims and found claims that were unjust. Then these questions were asked and these answers given by the juror:

"Q. Perhaps in hearing a case of this character, these strong impressions that have been made would remain with you and might unintentionally affect your judgment in a case of this kind, would it not? A. I don't know as it should affect it at all."

Then after the juror had said that he might naturally form opinions from his experience, that he wouldn't want to, he was asked

if his experience would affect his deliberations. He answered: "It may; I don't think so; I would try to do my best."

Then the following questions and answers were given:

"Q. . . . You are afraid it might have some effect of that kind, unintentionally, of course? A. I don't know. I think I could give a fair trial. I wouldn't want to say. I would have to be guided by the evidence, of course.

"Q. Certainly, you would try to do that? A. Yes.

"Q. But, at the same time, these past experiences would probably have some effect in your deliberations? A. It may demand a certain percentage of evidence.

"Q. More than otherwise? A. To show me.

"Q. It might require more evidence than if you hadn't had these experiences, is that what you mean? A. I don't know whether it would be that exactly. I would have to see plain evidence, of course."

The prejudice of a prospective juror because of his experience was discussed in Parlon v. Wells, 17 S. W. (2d) 528. In the present case, all this juror said was that in his experience in his connection with the liability insurance, where he became acquainted with the personal injury cases, he might possibly have acquired some sort of prejudice against claims in such cases. It was not shown that he had ever had any experience in adjusting a claim of the kind presented here, or that he had ever had any knowledge of one. Naturally in his business his experience was with injuries caused by violence in the negligent operation of some mechanism. He said he didn't know that his experience would affect his judgment at all; he would try to do his best. "I would have to be guided by the evidence of course." He didn't know whether his experience was such that it would require more evidence (presumably) to justify a finding for the plaintiff. He "would have to see plain evidence of course." The answers of the juror showed that he was honestly endeavoring to reveal the exact condition of his mind in relation to the case. But his positive statement that he would be "guided by the evidence, of course" is all that could be expected of any juror. All this notwithstanding the very shrewd and adroit examination by plaintiff's counsel endeavoring to get him to say that he would be influenced by his experience rather than by the evidence. We think he was properly qualified. His examination guided the plaintiff in making her peremptory challenges which included this particular juror, and he did not sit in the case.

II. The plaintiff complains of Instruction 4 given on the part of the defendant. It is as follows:

"Gentlemen of the jury, you are instructed that under the law a physician in treating a case is not held as an insurer of favorable results. He is only required to use that degree of care and skill possessed by ordinarily careful and skillful physicians at that time and in that community and in that particular branch of the profession in which he practices.

"Therefore, the mere fact that the operation upon the plaintiff in this case may not have been successful is not of itself sufficient to warrant you in finding a verdict against the doctor, and before you can find a verdict against the doctor you must find that he was negligent in one or more particulars submitted to you by other instructions. If he was not negligent in any of these particulars it becomes your duty to return a verdict in favor of Doctor Barck, even though you find that plaintiff did not recover her sight by reason of an infection."

To the action of the court in giving said Instruction 4 plaintiff duly excepted at the time.

The point made by appellant on this instruction is that the jury was authorized to find a verdict for the defendant if he was *"negligent* in any one or more of the particulars submitted to you by other instructions." Whereas, the defendant was not only charged with the lack of *care,* but with the lack of skill.

At the instance of the plaintiff the court instructed the jury as to the facts in issue, and then directed:

"If the jury further find from the evidence that while defendant so had charge of plaintiff as an oculist" that he failed in certain particulars to sterilize and antiseptically cleanse as claimed, and "failed to exercise ordinary care and skill, and that such failure to exercise ordinary care and skill directly caused such infection, loss of sight, etc., they should find for the plaintiff.

Instruction 2 given for the plaintiff defines ordinary skill as such skill as would ordinarily be exercised under the same or similar circumstances by an ordinarily skillful oculist.

Instruction 3 given for plaintiff defines "ordinary care" as meaning "such care as would ordinarily be exercised under the same or similar circumstances by an ordinarily careful oculist . . . engaged in practice."

The first part of Instruction 4 objected to, directs the jury that the defendant was required to use only that degree of care and skill possessed by ordinarily skillful and careful physicians at the time, etc., defining care and skill in much the same way as instructions 2 and 3, given on behalf of the plaintiff. Then in Instruction 4 the jury *is* directed that they could not find a verdict against the defendant unless they found he was *negligent* in one or more par-

ticulars submitted to you by other instructions. Plaintiff argues that he could be negligent only by failing to use ordinary *care*, while defendant claims he could also be negligent if he failed to use ordinary skill, and in directing the jury to find for the defendant unless he was negligent in one or more of the particulars mentioned in other instructions, means negligence in failing to exercise ordinary care or in failing to exercise ordinary skill. The use of the word "instructions," in the plural refers to all the other instructions, and the words "care and skill" are used together in all of them except in Instruction 3, in defining ordinary care. It will be noted that the petition does not allege, nor is it claimed anywhere in the trial, that Dr. Barck was lacking in ordinary skill. He possessed a high reputation as a skillful and successful specialist in diseases of the eye. Then what would his failure to exercise skill be called? It is not claimed that he wantonly and purposely failed to use his skill. The only term you could possibly apply to it would be negligence. He possessed skill and negligently failed to use it.

Further, the operation itself was successful. It is not claimed otherwise. The only trouble was the subsequent infection which could not come from any lack of skill in the performance of the operation. It could come only from negligence in failing to use care or skill in sterilizing the subject and all the instruments and appliances, or from the presence of disease germs which ordinarily careful and skill preparation would not eradicate.

This court in Wencker v. M. K. & T. Ry. Co., 169 Mo. 1. c. 598, quotes with approval a definition of actionable negligence: "The neglect of the use of ordinary care or skill toward a person to whom the defendant owes the duty of observing ordinary care and skill."

The defendant owed the plaintiff a duty to exercise ordinary care and ordinary skill, and failure to exercise either was negligence. This court said in Swineford v. Franklin County, 73 Mo. 1. c. 283: "Negligence is an omission of duty. Where there is no duty, there can be no negligence."

Since the defendant owed the plaintiff a duty to exercise ordinary care and skill, his failure to exercise either would be negligence. Even if he was incompetent and attempted an operation which he knew he could not perform, it would be negligence. It was said in Jackson v. Bell Telephone Co., 219 S. W. 655, 1. c. 658: "It would be the greatest carelessness for a wholly inexperienced person, without previous instruction from competent persons, to undertake to do so" (that is, operate an automobile).

So the term "negligence" not only covers a lack of care, but the failure to exercise skill which the person possesses, or the attempt to exercise skill which he knows he does not possess.

We think, therefore, that the giving of Instruction 4 could not mislead the jury.

III. While the plaintiff was on the stand she was asked if she knew whether Dr. Barck had performed any other operations that morning and she answered yes, and that he had said it was a cataract operation. Then plaintiff's counsel asked if the doctor told her the result of the operation. That was objected to, the objection sustained and appellant assigns error to that ruling.

Dr. Barck had not been asked about that matter. It was not claimed that he was lacking in skill and there was no allegation to that effect. It could not be used to impeach anything he said because he had not testified. On cross-examination he was asked, apparently, about the same matter this way: "Was there not another man there at the same time that came over from Illinois that you operated on for cataract that lost his eye?"

The court sustained the defendant's objection to the evidence, and then plaintiff's counsel offered to show that a man was operated on by defendant about the same time he operated on Mrs. Rothschild and the man lost his eye, and he operated on two or three other cases about the same time and they lost their eyes. Objection to that was sustained and appellant assigns error to the ruling. Lack of skill was not alleged in plaintiff's petition, and there was no issue to which it was relevant. If Dr. Barck was so unfortunate as to perform unsuccessful operations on other patients it would not necessarily follow that he did it unskillfully. There are various other causes why it might be unsuccessful, as in case of a patient whose age is so advanced that the operation is the last desperate chance. Even if it would be competent to show that he had used a lack of care or skill in operations on other patients it would not be relevant in this case. The issue before the jury in this case was whether Dr. Barck exercised proper care and skill in operating upon the plaintiff. His reputation and ability were not in issue.

While the plaintiff was on the stand her counsel offered to show, in the operation on the left eye, which came after the operation on the right eye, the manner and method by which the antiseptic and sterilizing processes were performed. The court sustained an objection to that testimony. The testimony given by the plaintiff on this subject, who knew nothing about such surgery, would not tend to show that the method employed on the other eye was the proper or approved method, or any better than the one the defendant employed in operating on the right eye.

Appellant assigns error to the action of the court in stopping him in his argument when he was attempting to say that another opera-

tion on the left eye had been a success. This sort of argument was improper for the reason just mentioned.

Further error is assigned because the court sustained an objection to the argument of plaintiff's counsel in commenting upon the respondent's failure to bring the hospital nurses as witnesses to the trial. A party has no right to complain of the opposing party's failure to bring witnesses who are equally available to both parties. There is nothing in this record to show that the nurses could not have been summoned as witnesses for plaintiff as well as for the defendant. They were not shown to be under the control of the defendant, or that plaintiff was unable to ascertain their names or locations.

Appellant assigns error to the action of the trial court in striking out parts of the plaintiff's petition, several of such motions being overruled. In three instances the motions were sustained. The appellant, however, failed to mention the action of the court in that matter in her motion for new trial, hence they are not for our consideration.

The judgment is affirmed. All concur.