STATE of Missouri, Respondent,

v.

Donald VALENTINE, Appellant.

No. 61077.

Supreme Court of Missouri,
En Banc.

Oct. 19, 1979.

James F. Booth, Clayton, for appellant.

SEILER, Judge.

This is an appeal from a conviction by jury of robbery in the first degree by means of a dangerous and deadly weapon. This case was transferred to the Court after opinion by the Court of Appeals, Eastern District, upon appellant's motion because of the general interest and importance of the questions presented under Rule 83.03. We will treat this case as though here on original appeal. Mo.Const. art. V. § 10.

The alleged robbery occurred on February 27, 1976, at approximately 8:00 p. m. at a drive-in restaurant in St. Louis in the 4300 block on Dr. King Drive. The assistant manager of the restaurant testified that he observed a man with a gun confronting a customer. The gunman then

pointed the gun in the direction of the assistant manager, a Mr. Thurman, while another man, whom the assistant manager later identified as appellant, ordered him to "give me all the money." The assistant manager allegedly handed over about $300 from the cash drawers and the two men left the restaurant. An on-duty police officer observed the two men leaving the restaurant and noticed the gun in the possession of one of them. The officer ordered this man, Louis Bateman, to drop the gun and proceeded to arrest him. The other man, allegedly appellant, fled on foot. An arrest order was put out for appellant and a 1969 maroon Continental. About two hours later, appellant, while driving such an automobile, was arrested at Hamilton and Delmar, St. Louis. On appeal, appellant submitted five grounds of alleged error on the part of the trial court, including a charge that the court erred in permitting the state to interject an inference of hearsay evidence into trial and a charge that the court erred in permitting the state to create an adverse inference in the minds of the jurors in the failure of the defense to call an allegedly "equally available" witness, who had been endorsed by the prosecution as a potential state witness in appellant's first trial. The court of appeals affirmed the judgment of the trial court and we granted the motion for transfer on the basis of these two questions.

Appellant alleges that the trial court erred in permitting the state to offer the following testimony during the direct examination of Sgt. McCrary, the police officer who apprehended Louis Bateman, the man with the gun, at the scene of the robbery:

"Q. Now, the man that you took into custody on the parking lot, who was he, Officer?

"A. His name was Louis Bateman.

"Q. Did you—strike that if I may—Sgt. McCrary, were you the only officer at the scene that night or did other officers come?

"A. Other officers subsequently arrived at that location.

"Q. Specifically were these officers from your unit?

"A. Yes, sir.

"Q. Do you recall who they were?

"A. Det. Charles James, Tommy Franklin, and Derrick Askew.

"Q. And, did they assist you with the investigation that evening?

"A. Yes, sir, they did.

"Q. Now, did you continue your investigation?

"A. Yes, I did.

"Q. And, specifically, Officer, *how did you go along or how did you go about continuing your investigation*?

"A. We placed an arrest order—*after an investigation we placed an arrest order out for Donald Valentine as being the second subject.*" (emphasis added).

Appellant's counsel objected to the above testimony but his objection was overruled. Thereafter, the court called a temporary recess and proceedings continued in the judge's chambers outside the hearing of the jury. During the judge's discussion with counsel, it was revealed that this was the second trial of this case, the verdict of the first case having been set aside because of the admission of improper hearsay evidence. In the earlier trial, the police officer testified to the effect that after police had questioned the purported accomplice of appellant, they then went out and arrested appellant.

After the in-chambers discussion, proceedings were resumed in the courtroom within the hearing of the jury:

"Q. (By Mr. Poehling) Officer, I believe before the recess we finished with the question that you indicated in your testimony you had placed an arrest order out for Donald Valentine and a 1969 maroon Continental. Is that a correct statement of your testimony?

"A. A 1969 black over maroon Continental.

"Q. Black over maroon. All right. Thank you, Officer. To your knowledge—were you present when the defendant was arrested, Officer?

"A. No, I was not.

"Q. When was the next time you saw the defendant?

"A. When he was brought into our office, to the TACT office.

"Q. Do you recall approximately when that was, Officer?

"A. I couldn't be sure of the exact time. I would imagine it was around maybe 10:00 or eleven o'clock, possibly a little later. I couldn't be sure of the exact time.

"Q. Let me ask you this, Officer. *Are we talking about a matter of days, a matter of hours*?

"A. *It was a matter of hours.*

"Q. *A matter of hours.* All right . . . ." (emphasis added).

Appellant submits that, in light of the prior trial verdict having been set aside for the same alleged error, the prosecution purposely injected an inference that Bateman had told the officers that appellant was the accomplice, and such an inference was hearsay evidence. Appellant points to one of the questions which the jury addressed to the judge only thirty-five minutes after the jury retired to deliberate, as evidence that the inference was not lost upon the jury:

"3. Why was Valetine (sic) wanted for this crime? Was it becaue (sic) of the description given to police by Mr. Thurmon (sic) *or was it from a statement from Bateman* " (emphasis added).

■ It is hornbook law that a witness may not testify to facts if those facts are based on hearsay. It is no less a violation of the hearsay rule to set up a set of circumstances by the testimony of a witness which invites the inference of hearsay. *State v. Chernick*, 280 S.W.2d 56 (Mo.1955); *State v. Johnson*, 538 S.W.2d 73 (Mo.App. 1976). In *State v. Edwards*, 435 S.W.2d 1, 6 (Mo.1968), this Court stated the general rule:

"[T]estimony which, by clear inference, showed that an alleged accomplice had implicated the defendant in the offense involved, was just as much hearsay and objectionable as the implicating statement itself would have been. . . . [T]he extrajudicial statement of a third person [that] was attempted to be used as evidence of the guilt of the accused, [is] a clear-cut hearsay rule violation."

In *Chernick*, the circuit attorney testified that after he had questioned the alleged accomplice, "we put an arrest order out for Glenn Chernick." 280 S.W.2d at 59. Even though the alleged accomplice did not take the witness stand, the circuit attorney's testimony was found to have created "a substantial basis for the inference that [the alleged accomplice] had implicated defendant as a participant in the robbery". The Court then stated, "Now the same considerations which would have invoked the rule excluding hearsay evidence of the actual assertions of Scholl would forbid that any inference against defendant should be drawn from the conduct of the Circuit Attorney actuated by what Scholl may have said." 280 S.W.2d at 59.

■ In the case at bar, the state argues that such an inference was not created. The state submits that no where did the officer state that *after questioning Bateman,* an arrest order was issued. It is the state's argument that because the jury had no way of knowing what in the investigation led to the issuance of the arrest order, no hearsay inference was created. The jury's inquiry during their deliberations belies this contention.

The prosecution presented only one witness, Mr. Thurman, the restaurant assistant manager, who could identify appellant as being at the scene of the robbery, even though there were an estimated ten customers who could have witnessed what occurred. No other evidence was offered by the state connecting appellant with the crime. Appellant, on the other hand, presented two alibi witnesses who testified that appellant was at his apartment before,

during, and for at least an hour after, the robbery occurred. One person who could be expected to know who the other participant was would be Louis Bateman, the man who was arrested by Sgt. McCrary, at the scene. Louis Bateman was called as a witness for the prosecution, even though the state was informed by Bateman's counsel that he would refuse to testify. Bateman took the witness stand and declined to answer questions posed by the prosecution on the ground that he might be forced to incriminate himself. After Bateman refused to testify, what he might have said after he was apprehended and during the police investigation at the robbery scene would certainly be important to the jury. Officer McCrary testified that immediately after the alleged robbery, he approached two men leaving the restaurant. He apprehended one, but the other escaped *on foot*. He did not testify that he knew that the fleeing accomplice was appellant. Indeed, Officer McCrary did not identify appellant at the trial as having been the fleeing accomplice. He merely testified that three other officers joined him at the scene of the robbery and that after their investigation they put out an arrest order for appellant *and* his automobile, about which there is no other testimony. The prosecution then stressed the point that all within as little as two hours time, the officers completed an investigation at the scene of the robbery, issued an arrest order for appellant and his automobile, found appellant driving the automobile, and transported appellant to the police station. It is clear that the state has set up a set of circumstances that invites the inference of hearsay evidence, namely that Bateman told police appellant's name and described appellant's automobile.

In *Chernick* the prosecution witness testified that *after questioning* the accomplice, the arrest order was issued. In this case, the prosecution witness testified that the accomplice was apprehended, and after *investigation*, an arrest order was issued. The same impermissible hearsay inference was created in both cases. As in *Chernick*, the same considerations which would have invoked the rule excluding hearsay evidence of the actual assertions of Bateman also forbid that an inference against appellant should be drawn from the conduct of the police actuated by what Bateman might have said. It was prejudicial error on the part of the trial court to permit the admission of this hearsay evidence.

The second question which provided a basis for transfer of this case is whether the trial court erred in permitting the state to create an adverse inference in the minds of the jurors by calling attention to the failure of the defense to call an allegedly "equally available" witness. At trial, appellant produced two alibi witnesses. Both men testified that they were with appellant and a woman named Pat at appellant's apartment during the time the robbery occurred. Little was said about this woman. Keith Valentine, appellant's brother, merely testified that when he arrived at appellant's apartment "[a] young lady named Pat" was there. On cross-examination, he responded to questions about Pat as follows:

"Q. —there was a young lady there, is that right?

"A. Yes.

"Q. And, what did you say the young lady's name was?

"A. Pat.

"Q. Is the young lady related to your brother in any way?

"A. No, she's not.

"Q. Have you seen her with your brother before?

"A. Yes.

"Q. Does she have, if you know, any type of social relationship with your brother, Donald?

"A. I couldn't really say.

"Q. All right. Now, am I correct in your testimony that Pat, the young lady, was already there before you got there?

"A. Yes, she was.

"Q. Do you know the young lady's full name?

"A. No, I don't.

"Q. Am I also correct in that your testimony was that Pat remained there with your brother after you left?

"A. Yes."

Paul Carter also testified that when he and Keith Valentine arrived at appellant's apartment there was a young lady with appellant. On cross-examination, Paul Carter responded to questions about Pat as follows:

"Q. Who was at the house when you arrived, sir?

"A. Donald and the young lady he was with.

"Q. Do you know the young lady's name?

"A. Yes.

"Q. What would the young lady's name be?

"A. Pat.

"Q. Do you know her last name?

"A. No, I don't.

"Q. Do you know what, if any, relationship she had to Donald?

"A. No, I didn't—as far as I knew they were friends."

It is the state's contention that this testimony laid a proper foundation for the prosecution's closing remarks which called the jury's attention to the fact that appellant did not call Pat as a witness:

MR. POEHLING: ". . . But who does know probably? Pat. She's with him when he's arrested. She's with him the whole evening.[1] If anyone could offer substantial testimony as to where he was that evening—"

MR. BURNET: "Your Honor, I'll object. It's a comment on the failure to call an equally available witness. He has the statement from Pat saying Donald Valentine—"

THE COURT: "Now, don't—"

MR. POEHLING: "Your Honor, this witness is not equally available."

THE COURT: "Objection will be overruled."

MR. POEHLING: "If anybody could offer you any meaningful testimony who closer than the girl who by Mr. Burnet's two witnesses was with him the whole time? Where is Pat?"

MR. BURNET: "I'll renew my objection, Your Honor."

THE COURT: "Objection will be overruled."

Thereafter, counsel approached the bench and, outside of the hearing of the jury, it was disclosed that the prosecution had been furnished by the defense with a memorandum prepared by an investigator for the public defender as to what Pat told him. Appellant's attorney, Mr. Burnet, claimed that Pat was an equally available witness and that the state had knowledge of her name, address and the testimony she would give. The state contended that Pat was not equally available and that her statement contradicted the alibi witnesses' testimony that appellant was with them at his apartment on the night of the robbery. Like the inference of hearsay discussed above, this adverse inference was not lost upon the jury. One of the questions the jury addressed to the judge after it had retired to deliberate concerned the statement made by Pat:

"1. We would like to see or be advised of Pat's statement."

Earlier in the trial, during an in-chambers discussion outside the presence of the jury it was revealed that Patricia Ann Phillips, "Pat", had been endorsed as a state witness in the first trial but she refused to honor the subpoena that had been served upon her. The judge in the first trial had issued a writ of attachment, but the state was not able to locate her. There is no evidence in the record that either the state or the defense made any effort to locate Pat or to call her as a witness in the second trial, some five months after the original trial court had set aside the verdict in the first trial.

---

1. There was no evidence before the jury to support counsel's assertion that Pat was with appellant either the whole evening or when he was arrested.

This Court has long held that a party cannot comment on the failure of the other party to call a witness available to both parties. This rule was first enunciated in *Rothschild v. Barck*, 324 Mo. 1121, 26 S.W.2d 760 (1930), a civil case, and reaffirmed in *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647 (1942), a criminal case. In *Rothschild*, this Court explained:

"A party has no right to complain of the opposing party's failure to bring witnesses which are equally available to both parties. There is nothing in this record to show that the nurses could not have been summoned as witnesses for plaintiff as well as for defendant. *They were not shown to be under the control of the defendant, or that plaintiff was unable to ascertain their names or locations.*"

26 S.W.2d at 763 (emphasis added). In *Collins*, this Court explained when a party may properly comment on the failure of the other party to call a witness:

" 'In other words, a witness may be said to have been *peculiarly "available"* to one party to an action, to that upon that party's failure to have produced him in court an inference will arise that his testimony would have been unfavorable, when, because of such party's *opportunity for knowledge of or control over the witness, or the community of interest between the two, or the prior statements and declarations of the witness*, it would be reasonably probable that the witness would have been called to the trial to testify for such party except for the fact that it was either known or feared that his testimony on the stand would have been damaging rather than favorable.' "

165 S.W.2d at 649 (emphasis added), citing *Chavaries v. National Life & Accident Insurance Co.*, 110 S.W.2d 790, 794-95 (Mo. App.1937). *Collins* further explained the community of interest between a party and a potential witness, above, which may justify the adverse inference if that witness is not called: " 'the relationship borne by the

witness to a particular party *as the same would reasonably be expected to affect his personal interest in the outcome* of the litigation . . .' " 165 S.W.2d at 649 (emphasis added).

■ In the case at bar, the state contends that Pat was not equally available and that her purported relationship with appellant justified the prosecution's remarks and the jury's drawing of an adverse inference because she was not called as a defense witness. Yet, the only mention of Pat in this case was in the testimony of Keith Valentine and Paul Carter, neither of whom cast appellant's relationship with Pat as anything more than a social acquaintance.[2] The state has not shown that Pat was under the control of appellant or that the state was unable to ascertain her name or location. Indeed, on an earlier occasion, the state had endorsed her as a state witness and had served her with a subpoena. Under *Rothschild*, she was an equally available witness and the prosecution's comments were improper. Nor was she a "peculiarly available" witness under *Collins*. There is no evidence of appellant having a superior "opportunity for knowledge of or control over the witness" and both sides were equally aware of her existence. There is no evidence of a "community of interest" or a relationship borne by Pat to appellant such as would be expected to affect Pat's personal interest in the outcome of the trial. And finally, Pat's prior statement, wherein she was reported to have told the investigator that appellant was at her house until 11 or 12 p. m., was given to the state by appellant so it cannot be said that her having talked to appellant's investigator made her any more available to appellant than to the state. Indeed, this element of the criteria set forth in *Collins* "should rarely have application in view of the extensive discovery now available in criminal cases . . . the original reasons for the rule have been largely eliminated by the availability or dis-

---

2. The state asserts in its brief that Pat told the investigator from the public defender's office that appellant had spent the night with her at her house. There is nothing in the record to support this assertion. In addition, the state's evidence was that appellant was arrested around 10 or 11 p.m. the night of the robbery.

covery to both sides." *State v. Ganaway,* 556 S.W.2d 67, 70 (Mo.App.1977).

■ The result in this case is no different because the state could not produce Pat in the first trial after she was found and served with a subpoena. No contention is made and there is no evidence that appellant took any action to conceal her or her testimony from the state or to mislead the state as to what her testimony would be, and accordingly, no adverse inference arises in appellant's failure to call her as a witness. *State v. Shaw,* 569 S.W.2d 375, 380 (Mo.App.1978). In fact, there is no evidence that the state even attempted to find Pat for the second trial, even though the state was notified five days prior to trial that the defense had decided not to call her as a witness. The trial court erred in permitting the state to comment on appellant's failure to call the witness.

■ While appellant raised the point in the court of appeals that the trial court erred in overruling his motion for judgment of acquittal, the facts set forth earlier herein show that a submissible case was made. As to other points raised, they may not arise in another trial and in any event with respect thereto the parties can be guided and cautioned by the authorities which they have advanced in their briefing.

The judgment is reversed and the cause remanded for a new trial.

BARDGETT, C. J., WELLIVER, J., and FINCH, Senior Judge, concur.

DONNELLY and RENDLEN, JJ., concur in result.

MORGAN, J., dissents.

HIGGINS, J., not participating because not a member of the court when cause was submitted.