STATE of Missouri, Respondent,

v.

Jerry SYKES, Appellant.

No. 41760.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 9, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 1981.

Application to Transfer Denied March 9, 1981.

Robert C. Babione, Public Defender, John Putzel, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto and Mary C. P. Pincus, Asst. Attys. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction by a jury of robbery first degree and armed criminal action, and resultant 15 and 10 year concurrent sentences by the court. We affirm the robbery conviction and reverse the conviction for armed criminal action.

The evidence supports the conclusion that defendant and another man, Dwayne Jenkins, held up the bar maid of the Texas Lady Lounge in the City of St. Louis, at gunpoint, on October 26, 1977. Jenkins was arrested as he left the Lounge by police answering a silent alarm activated by the bar maid. Defendant was chased by a police officer and escaped. He was arrested in Boston approximately eight months after the robbery.

Defendant's first point is that the trial court erred in refusing to order the attendance at trial of a witness residing in Boston. The motion for such attendance was filed pursuant to Sec. 491.420 RSMo 1978. The witness involved was Lucy Woods, defendant's grandmother. Counsel advised the court that he had received a letter purportedly signed by Ms. Woods (but not written by her) indicating that defendant had been in Boston from October 20 through October 26, 1977. The letter was not identified nor offered in evidence. In response to the letter, counsel talked to a woman in Boston who identified herself as Lucy Woods. In the telephone conversation, the woman indicated her belief that defendant arrived in Boston "somewhere in the middle of October or toward October 20, 1977, and had in fact resided with her for a week or two weeks prior to leaving her residence to live in another place, but within the city of Boston." Counsel did acknowledge "that at no time did she claim to be able to testify beyond, without any doubt at all, that her grandson resided with her on October 26." No affidavit of Ms. Woods was offered nor was any further evidence adduced that Ms. Woods was a material witness.

Secs. 491.400 through 491.450, RSMo 1978, is the Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings. It provides that if a person in another state which has adopted the Uniform Act is a material witness in a prosecution in this state, the court may issue a certificate stating such facts and specifying the number of days the witness will be required. This certificate is then presented to a judge in the county where the witness may be found. Following a hearing that judge, if he finds certain statutorily established facts, shall issue a summons compelling attendance by the witness in the requesting state or if required the witness is taken into custody and delivered to an officer of the requesting state. Massachusetts has enacted the Uniform Act.

The constitutionality of this act has been upheld. See *New York v. O'Neill,* 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959). It is apparent that the statute, while constitutional, can have a substantial impact temporarily upon the freedom of the witness. As a result the courts have required a clear showing that the testimony of the witness is in fact both material and necessary. *State v. Ivory,* 609 S.W.2d 217 (Mo.App.E.D.1980); *People v. McCartney,* 38 N.Y.2d 618, 381 N.Y.S.2d 855, 345 N.E. 2d 326 (1976); *People v. Cavanaugh,* 69 Cal.2d 262, 70 Cal.Rptr. 438, 444 P.2d 110 (Cal.banc 1968); *People v. Newville,* 220 Cal.App.2d 267, 33 Cal.Rptr. 816 (Cal. App.1963). The burden is upon the party seeking the presence of the witness to establish the materiality and necessity of the witness. That party should present evi-

dence by affidavit of the witness or in some other way establish the testimony is material and necessary. Unsupported statements of materiality and necessity are not sufficient to require the trial judge to grant the application under the statute. *State v. Ivory, supra; People v. McCartney, supra* [3–5]. Even where the showing of materiality and necessity is made the granting of the application is largely within the discretion of the trial court, for the statute provides he "may" issue the certificate. Sec. 491.-420.1 RSMo 1978; *State v. Ivory, supra; People v. McCartney, supra* [6, 7]; *People v. Cavanaugh, supra* [3, 4]; *People v. Newville, supra* [9].

We find no abuse of discretion by the trial court. No evidence was presented to the court to establish materiality or necessity. Only counsel's statement of his telephone conversation was before the court. That conversation (which may or may not have actually been with Ms. Woods) was indefinite at best in establishing defendant's presence in Boston at the time of the robbery. Upon the facts before it, the court was not required by the statute to issue the certificate to bring Ms. Woods to Missouri.[1]

Defendant's second point is that the trial court erred in admitting into evidence and allowing the jury to view a series of photographs, including one of defendant, which had been shown to the bar maid, and from which she identified defendant as one of the robbers. It is here contended that the pictures clearly inferred that the portrayed individuals had criminal arrest records and defendant was thereby prejudiced. When the photographs were identified and admitted into evidence, they contained a legend from which it might have been inferred that the pictures were taken after the subjects had been arrested. No testimony to that effect was adduced. Before the pictures were seen by the jury the prosecutor physically removed the legend from each of the photographs. Defendant objected to

this removal and insisted that the photographs be passed to the jury in the condition in which they had been identified and admitted—with the legend attached. The legend was reattached and the photographs were then passed to the jury.

The appellate courts of this state have consistently held that no valid objection lies to an identification based upon a photograph which does not identify the party pictured as a criminal. *State v. Tyler,* 454 S.W.2d 564 (Mo.1970) [7, 8]; *State v. Lorenze,* 592 S.W.2d 523 (Mo.App.1979) [13, 14]. It is also clear that a party may not take advantage of an error of his own making. *State v. Nenninger,* 354 Mo. 53, 188 S.W.2d 56 (1945) [3–6]; *State v. Pettis,* 522 S.W.2d 12 (Mo.App.1975) [11]. The photographs here when tendered for viewing by the jury were neutral and did not identify the persons portrayed as criminals. They were not objectionable. It was only upon defendant's insistence that the objectionable material was reattached and only at that point could any prejudice to defendant occur. Defendant is in no position to complain of this self-inflicted prejudice.

Defendant's third point involves certain testimony of a police officer which defendant contends runs afoul of a line of cases commencing with *State v. Chernick,* 278 S.W.2d 741 (Mo.1955). *See State v. Valentine,* 587 S.W.2d 859 (Mo.banc 1979); *State v. Chernick,* 280 S.W.2d 56 (Mo.1955); *State v. Jones,* 583 S.W.2d 561 (Mo.App.1979); *State v. Johnson,* 538 S.W.2d 73 (Mo.App. 1976). Those cases arise in a circumstance where a witness has interviewed a third party, usually a co-participant in the crime, and then testifies to a course of action taken as a result of that interview which creates a clear inference that the interview implicated defendant in the crime. The Missouri courts have consistently held that where that occurs prejudicial error arises because the clear inference from the testimony is that the accomplice had implicated the defendant in the offense and that inference is based upon hearsay.

---

1. As discussed in *People v. Cavanaugh, supra* [1, 2] and *People v. McCartney, supra* [1], the Uniform Act is not constitutionally mandated.

The question we have decided is therefore one of statutory construction, not one of constitutional dimension.

The testimony upon which defendant premises error was as follows:

"Q. Did you have occasion—you or your partner have occasion to conduct any investigation in connection with that particular robbery? A. Yes.

Q. And on what date did you conduct any investigation?

A. On October the 27th.

Q. Okay. Specifically, what investigation did you conduct?

A. Detective Larry Smith and myself interviewed Dwayne Jenkins.

Q. In addition to interviewing Dwayne Jenkins, what else did you do?

A. Later that day, showed photographs of the subjects to the victim Ruby Johnson.

Q. Where did this take place?

A. Texas Lady Lounge.

Q. Were you at the scene, crime scene also?

A. Yes, sir.

Q. Okay. Approximately how many photographs or exactly how many photographs did you show to Ruby Johnson?

A. Seven."

■ No objection was made to this testimony at the time it was elicited or in the motion for new trial.[2] The matter therefore comes before us on a plain error contention. Defendant argues that the reference to the interview with Jenkins followed by the testimony concerning the photographs created an inference that Jenkins had implicated defendant. We disagree. Unlike the cases heretofore cited there was no direct correlation between the interview and the arrest of defendant. Here, later in the day following the interview, the police officer returned to the crime scene and showed the victim seven photographs, including one of defendant. He in short continued his investigation. He did not immediately attempt to arrest defendant. He took no action following the interview which directly pointed to defendant as the robber. He utilized photographs of seven people to obtain an identification not just a photograph of defendant. There is no clear or compelling inference that the inclusion of defendant's photograph arose because of the interview with Jenkins. It is just as reasonable to infer that the interview with Jenkins did not implicate defendant as it is to infer that it did. We cannot conclude that the testimony was such as to create the "clear" inference that Jenkins had implicated defendant found present in the cases heretofore cited.

The case most nearly like the one before us is *State v. Valentine, supra.* But there the correlation between the accomplice's statement and the arrest was much more direct for the officer strongly indicated that his investigation after that interview consisted solely of placing an arrest order out for the defendant. Certainly there was no indication of any investigative activity which resulted in the arrest other than the interview with the accomplice. The inference of implication therein was much stronger than here. Additionally, the jury in *State v. Valentine, supra,* made an inquiry during its deliberations concerning what the accomplice had told the officer and the court relied upon that inquiry to support its finding that the testimony created the prohibited inference. We find *Valentine* distinguishable.

■ In view of *Sours v. State,* 603 S.W.2d 592 (Mo.banc August 1980) we must reverse the armed criminal action conviction as violative of the prohibition against double jeopardy.

Conviction of robbery first degree affirmed, conviction of armed criminal action reversed.

SATZ and SIMON, JJ., concur.

2. Prior to the witness testifying, defense counsel did discuss with the court and the prosecutor his concern that the witness might refer to having received information from an informant (not Jenkins). He also stated he would object to any evidence constituting hearsay which the witness obtained from Jenkins. The prosecutor indicated he did not intend to elicit any statements made by Jenkins or information about an informant. The court advised defense counsel that if the prosecutor went into the matters discussed or if the witness blurted out something prejudicial counsel should object at that time. No such objection was made.