**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Byron WEBSTER, Defendant-Appellant.**

**No. 46888.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 23, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1983.

Application to Transfer Denied
Nov. 22, 1983.

Henry Robertson and Peter Stragand, Asst. Public Defenders, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Dwight Warren, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal from a conviction by jury of capital murder. Defendant alleges that the trial court erred in permitting the prosecutor to create an adverse inference in the minds of the jurors by the failure of the defense to call an allegedly "equally available" witness, who had been endorsed by the prosecution as a potential state witness. We affirm.

The evidence adduced at trial tended to show that at approximately 12:00 a.m. on June 4, 1981, Steven Horne, George Baker and Yvonne Harris went to George's mother's house in St. Louis. Steven Horne stayed outside while George and Yvonne went inside the residence. Shortly after 2:00 a.m., two men were heard arguing in the street in front of the Baker home. Subsequently, two gunshots were heard.

Jefferey Baker, Sophia Baker, Evelyn Baker and Yvonne Hawkins all testified that upon hearing the gunshots, they ran to the windows and front door to see what was happening. The four testified that a man, later identified as defendant, was standing over Steven Horne, who lay unconscious in the street bleeding profusely. Additionally, defendant was seen hitting Horne in the head and face with what appeared to be a gun and was seen subsequently kicking him around the head and shoulders.

Shortly thereafter, the St. Louis Police arrived. Defendant tried unsuccessfully to leave the area in Horne's car. Unable to do so, defendant left the area on foot, ignoring the officer's order to stop. Defendant was arrested the following day. At the time of the arrest, defendant was wearing a light colored cap which was later identified by Evelyn Baker, Sophia Baker, Yvonne Hawkins and Ernestine Brown as a cap similar to that worn by the assailant of Steven Horne. Also seized from the defendant was a pair of blood stained tennis shoes.

The victim, Steven Horne, was taken to the hospital where he died from gunshot

wounds and a blunt trauma wound of the head. He had multiple lacerations and fractures on both the outside and at the base of the skull. Lacerations of the victim's face appeared as though they were made by the muzzle of a gun. Additionally, there was brain damage due to hemorrhaging of the brain and scalp.

Defendant at all times denied his involvement with the crime claiming at the time the incident occurred he was at the house of his sister, Debra Webster. On June 7, Carla Thomas who lived with Debra Webster was present when Debra Webster gave the police the bluejeans defendant was wearing on the night in question. Blood found on defendant's bluejeans matched the victim's blood. Further, fingerprints taken from the victim's car matched those taken of defendant.

At trial the prosecuting attorney, during the second part of his closing argument, told the jury:

[Prosecutor]: Now, I did not bring out Carla Thomas' testimony because I anticipated bringing her in. I was unable to do so. But [defendant's counsel] brought out that Carla Thomas gave to the detectives these jeans. Carla was there when the defendant came in. Where's Carla to testify as to what went on, what condition he appeared when he got there, what was on the top of his—

Defendant's counsel promptly objected.

[Defendant's Counsel]: Objection, Your Honor. Carla Thomas was endorsed as a witness for the State. She was more than available to the State.

[Prosecutor]: She was staying with . . . defendant's sister.

[Defendant's Counsel]: Let the record show that I have never talked to Carla Thomas.

[Prosecutor]: I don't know who talked to who. I haven't talked to anybody till morning . . .

[Defendant's Counsel]: Let the record . . . also reflect that Alexander Webster was another endorsed witness for the State and that [the prosecutor] had been quite aware that I was calling William Foster for at least three months.

At the close of the evidence, instructions and arguments of counsel, the jury found defendant guilty of capital murder and he was thereafter sentenced to a life term in the Missouri Division of Corrections, said sentence to be served without probation or parole for the first fifty years. Defendant brings this appeal from his conviction and sentence.

Defendant contends that the trial court erred in overruling his objection to comments made by the prosecutor in closing argument questioning defendant's failure to produce a witness, Carla Thomas. Thomas was endorsed as a witness by the state. Defendant argues that the witness was equally available to the state and the state could not complain of defendant's failure to call the witness.

■ It should be noted that the trial court has broad discretion in determining whether the facts warrant invocation of an unfavorable inference and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted. *State v. Moore,* 620 S.W.2d 370 (Mo. banc 1981).

■ Further, it has been established by case law that the prosecuting attorney may properly argue an adverse inference from the defendant's failure to produce a witness who would be reasonably expected to give testimony in the defendant's favor. *Moore, supra; State v. Collins,* 350 Mo. 291, 165 S.W.2d 647 (1942). Such comments are permissible because a logical inference can be drawn from a failure to call these witnesses to testify that their testimony would be damaging rather than favorable. However, such an inference does not arise and may not be argued if the witness is equally available to the defendant and the state. *State v. Valentine,* 587 S.W.2d 859 (Mo. banc 1979); *State v. Wilkerson,* 559 S.W.2d 228 (Mo.App.1977). The term "equally available" means more than susceptibility to process, *State v. Karnes,* 608 S.W.2d 455 (Mo.App.1980), and is resolved by consider-

ing three factors: (1) the one party's superior ability to know or identify the witness, (2) the nature of the testimony that the witness may be expected to give, and (3) the relationship between the particular party and the witness which indicates that the witness would be more likely to testify more favorably for one party than another. *Valentine, supra; State v. Floyd,* 598 S.W.2d 517 (Mo.App.1980).

In the instant case, it may be argued that defendant was in a position superior to that of the state's to call Carla Thomas as a witness as she was allegedly living with defendant's sister. However, the nature of the evidence reveals an opposite conclusion. Carla Thomas was present when defendant's sister gave the police defendant's blood stained bluejeans and further told the police that defendant did not arrive home until 3:00 a.m., after the commission of the offense. This fact tends to negate any "community of interest" established between defendant and this witness.

Further support for this conclusion may be found in *State v. Valentine, supra.* In *Valentine,* the unproduced witness was not shown to have any relationship to the defendant other than the fact the witness was with a group of people who were allegedly with the defendant at the time of the crime charged. While it is true that defendant was staying with his sister and Thomas at the time of the offense, such fact by itself is not enough to show a relationship between defendant and Thomas.

The result in this case is not different because the state could not produce Thomas at trial. No contention is made and there is no evidence that defendant took any action to conceal her or her testimony from the state or to mislead the state as to what her testimony would be, and accordingly, no adverse inference arises in defendant's failure to call Carla Thomas as a witness. *Valentine.* The trial court erred in permitting the state to improperly comment on defendant's failure to call the witness.

We must now consider whether the adverse inference argued before the jury constitutes prejudicial error under the circumstances of this case.

In deciding if an error is prejudicial, the court must consider the entire record to determine whether or not the defendant received a fair trial. *State v. Kennon,* 585 S.W.2d 525 (Mo.App.1979). A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination, *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), and the defendant is saddled with the burden of demonstrating such effect. *State v. Wren,* 643 S.W.2d 800 (Mo. 1983).

The burden is insurmountable. The evidence revealed that four individuals identified defendant as the man they saw kicking Steven Horne. The autopsy examination revealed lacerations and fractures on both the outside and at the base of the skull. These witnesses also identified the cap taken from defendant at the time of his arrest as similar to one worn by Steven Horne's assailant. Further, defendant's fingerprints were found inside Horne's car and the blood found on the bluejeans defendant wore the night of the crime was identical to Horne's blood type. In light of the overwhelming evidence against the defendant we find no reversible error occurred.

Judgment affirmed.

SMITH and KELLY, JJ., concur.