**STATE of Missouri, Respondent,**

v.

**Jimmy BALENTINE, Appellant.**

**No. WD 56159.**

Missouri Court of Appeals,
Western District.

Nov. 9, 1999.

advertising on their property.

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., SPINDEN and HOWARD, JJ.

BRECKENRIDGE, Chief Judge.

Defendant Jimmy Balentine was convicted by a jury of the class C felony of possession of an item that could be used to endanger the safety or security of a correctional center or the life and limb of an inmate or employee while on the premise of a correctional facility, in violation of § 217.360.1(4), RSMo Cum.Supp.1996. The court sentenced Mr. Balentine to ten years to be served consecutively to the sentence he was already serving. Mr. Balentine appeals his judgment of conviction. In his sole point on appeal, Mr. Balentine claims that the trial court erred in preventing his counsel from arguing an adverse inference from the State's failure to call a certain witness. Because the witness was equally available to both parties, the judgment of conviction is affirmed.

Mr. Balentine does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, *State v. Dudley,* 809 S.W.2d 40, 41 (Mo.App.1991), the evidence established that Mr. Balen-

tine was an inmate at the Western Missouri Correctional Center. On September 3, 1996, corrections officer Janice Lee arrived at Mr. Balentine's cell to accompany him to the disciplinary board's meeting so that a prior disciplinary violation could be read to him. When Mr. Balentine refused to cooperate, Officer Lee departed to advise the board that he would not leave his cell. After she had reported to the board, Officer Lee heard Mr. Balentine's cellmate, Immanuel Harris, yelling, kicking and banging upon the cell. She went back to the cell and found Mr. Harris at the door, asking to be taken out of the cell. When Ms. Lee looked behind Mr. Harris into the cell, she saw Mr. Balentine standing at his bed waving a homemade ice pick with his hand. Mr. Balentine told Officer Lee "to bring them on." Officer Lee then radioed for assistance. The supervising officer arrived and convinced Mr. Balentine to slide the ice pick underneath the door. Both Mr. Balentine and Mr. Harris were handcuffed and removed from the cell. As the officers took Mr. Balentine out of the cell, he said, "I'm going to kill somebody."

Mr. Balentine asserts on appeal that the trial court erred in not allowing his lawyer to argue that an adverse inference could be drawn from the State's failure to call Mr. Harris as an eyewitness to the events. Specifically, Mr. Balentine argues that Mr. Harris could reasonably be expected to testify in the State's favor since the State's ability to offer Mr. Harris immunity would make Mr. Harris peculiarly available to the State. Mr. Balentine claims that the State's failure to call Mr. Harris under these circumstances gives rise to the inference that Mr. Harris's testimony would have been unfavorable against the State.

"A trial court has considerable discretion in allowing or rejecting the arguments of counsel and its rulings will not be reversed unless the court abuses its discretion." *State v. Anderson,* 867 S.W.2d 571, 576 (Mo.App.1993). "If a witness is equally available to both parties or unavailable to either party, the trial court should not permit counsel to argue to the jury during closing argument that an adverse inference arises from the state's failure to call the witness." *Id.* Only when the missing witness is " 'peculiarly available' to one party [should] the court consider whether the party's failure to call the witness supports the inference that the witness could have testified adversely to that party if called." *State v. Baker,* 741 S.W.2d 63, 66 (Mo.App.1987). "Equally available" means more than merely being susceptible to service of process and is determined by consideration of the following three factors: (1) one party's superior ability to know or identify the witness; (2) the nature of the testimony expected to be given by the witness; and (3) a relationship between the party and the witness which indicates a likelihood that the witness would testify more favorably for that party than the other. *State v. Webster,* 659 S.W.2d 286, 288–89 (Mo.App.1983).

On the first factor, the record in this case indicates that both the State and Mr. Balentine's counsel knew before trial of Mr. Harris's presence in the cell at the time the weapon was discovered. Neither party had a superior ability to identify this witness. With regard to the nature of the testimony expected to be given, the testimony of Ms. Lee indicates that Mr. Harris' testimony should be favorable to the state. However, the record is void of any mention of prior statements or declarations of Mr. Harris and Mr. Balentine's counsel admittedly did not contact Mr. Harris or depose him prior to trial. So, there are no prior statements or declarations by Mr. Harris which would indicate what testimony would be expected from him. *See State v. Collins,* 350 Mo. 291, 165 S.W.2d 647, 649 (1942) (second factor is "the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case").

Concerning the third factor, Mr. Balentine argues that the State had an advanta-

geous relationship with Mr. Harris because of the State's ability to offer Mr. Harris immunity. However, Mr. Balentine cites no authority for his proposition that the State's ability to offer immunity makes a witness more available to the State and, in any event, the record demonstrates that the State never offered Mr. Harris immunity. In fact, Mr. Harris' status as a prison inmate could reasonably lead one to expect that he would feel loyalty to a fellow prisoner and animosity toward the State that is responsible for his incarceration, so that he would be expected to testify favorably to Mr. Balentine. Therefore, the trial court was justified in finding that there was not a relationship between the State and Mr. Harris that indicates a likelihood that Mr. Harris would testify more favorably to the State.

Evaluation of the three factors supports a finding that Mr. Harris was equally available to both parties, and not particularly available to the State. The trial court did not abuse its discretion in refusing to allow Mr. Balentine's counsel to draw an adverse inference from the State's failure to call Mr. Harris.

The judgment of conviction is affirmed.

All concur.