**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jeffrey Paul SMITH, Defendant–Appellant.**

No. 26442.

Missouri Court of Appeals,
Southern District,
Division Two.

May 27, 2005.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Leslie E. McNamara, Office of the Attorney General, Columbia, for respondent.

KENNETH W. SHRUM, Judge.

After a bench trial, Jeffrey Paul Smith ("Defendant") was found guilty of robbery in the first degree (§ 569.020) and armed criminal action (§ 571.015).[1] On appeal, Defendant alleges there was insufficient evidence adduced at trial to support his convictions. We disagree. We affirm.

## STANDARD OF REVIEW

Because Defendant challenges the sufficiency of the evidence, we must accept as true all evidence favorable to the State, including all favorable inferences that may be drawn from the evidence while disregarding all evidence and inferences to the contrary. *State v. Withrow*, 8 S.W.3d 75, 77 (Mo.banc 1999). We limit our review of a challenge to the sufficiency of the evidence supporting a criminal conviction to a determination whether sufficient evidence was presented from which a reasonable

---

1. All statutory references are to RSMo (2000), unless indicated otherwise.

juror could find the defendant guilty beyond a reasonable doubt. *State v. Charlton*, 114 S.W.3d 378, 384[9] (Mo.App.2003).

■ All favorable inferences used to support the verdict must be logical, reasonable, and drawn from established fact. *State v. Taylor*, 126 S.W.3d 2, 4 (Mo.App. 2003). "In considering the sufficiency of the evidence, there must be sufficient evidence of each element of the offense." *State v. Dixon*, 70 S.W.3d 540, 544[5] (Mo. App.2002).

### FACTS

On November 10, 2002, Paul Nation ("Victim"), who was eighty-seven years old, was robbed. Earlier that day, Defendant drove Rachel Haynes to Victim's home so that she could borrow money from Victim. Haynes obtained some money, and Defendant then drove her back to their apartment complex.

Later that evening, Defendant and Haynes returned to Victim's home. Upon arrival, both he and Haynes walked to Victim's door and made contact with Victim. Haynes then asked to use Victim's phone, and he agreed. In a statement made to the police, Defendant claimed that he remained at the doorway when Haynes went into the kitchen with Victim to use his phone. He stated that "Haynes suddenly produced a tire tool style metal object and began striking [Victim] over the head with it." Victim testified, however, that he was struck by a male. Victim claimed that "the guy was sitting at my kitchen table and up and pulled ... some kind of a car stick or something and hit me over the head with it." The evidence showed that Defendant was the only male at the house besides Victim.

Victim also testified that before the "guy" hit him in the head, his (Victim's) wallet was in his pocket. As a result of the assault, Victim was "kind of knocked out." Afterward, however, his "wallet was laying on the table with a five dollar bill on it, and everything else was gone." Continuing, Victim told the judge: "I don't know why *he* [the assailant] left [$5.00 in his wallet]. Make me think he hadn't robbed me, I guess." (Emphasis supplied.)

The investigating officer ("Brown") learned that Defendant owned the Ford Explorer vehicle used by Defendant and Haynes to get to Victim's house. Because of Victim's and Defendant's assertions that a tire tool was the assault weapon and based on Defendant's statement that Haynes suddenly produced a tire tool inside Victim's house, Brown decided to check Defendant's vehicle to see if it contained a tire tool. His search failed to uncover a tire tool in Defendant's Explorer. Brown testified there "was a storage area for the tools in the rear storage compartment in ... the vehicle. And there are factory ... placed clips that hold the tire iron in place. And there was no tire iron in those clips. And there was no tire iron ... in the vehicle that I found." Brown also explained that to remove the tire iron from its storage area inside the Explorer, a person would have to climb over the vehicle's seats and then "remove the plastic cover for the storage area." When Brown asked Defendant about the missing tire tool, Defendant answered, "he had no idea[;] [h]e didn't know about it[;] didn't know where it was."

After the assault, Defendant and Haynes left the scene of the crime, either separately or together in Defendant's vehicle. Sometime after the crime occurred, but later that evening, Defendant was arrested for the robbery. After a bench trial, the judge found Defendant guilty of first-degree robbery and armed criminal action. This appeal followed.

## APPLICABLE STATUTORY PROVISIONS

A person commits the crime of robbery in the first degree when, *inter alia,* he or she forcibly steals property, and in the course thereof, the person or another participant in the crime (a) causes serious physical injury to any person or (b) uses a deadly weapon or a dangerous instrument in committing the crime. § 569.020.1(1–4). In the factual context of this case, the term "forcibly steals" is defined as using or threatening the immediate use of physical force upon another person for the purpose of preventing resistance to the taking of property of another person. § 569.010(1). Armed criminal action is committed when any person commits any felony "by with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015.1.

## DISCUSSION AND DECISION

In his only point on appeal, Defendant alleges the trial court committed reversible error "in overruling [his] motion of judgment of acquittal." He argues that the evidence was insufficient to show "that it was [Defendant] who struck [Victim] and took money from his wallet, or that he was guilty of those offenses as an accomplice." This sufficiency of the evidence claim is premised on Defendant's argument that the trial court relied on "inadmissible hearsay testimony [from a police officer] informing [him] that Rachel Haynes accused [Defendant of the crime]."

The "inadmissible hearsay" alluded to in Defendant's point involves certain testimony of the investigating officer (Brown). He testified that on November 10, 2002, he was sent to investigate a reported robbery at Victim's house. Upon arriving, he saw blood flowing from lacerations on Victim's scalp. Victim was conscious, however, allowing Brown to speak with him briefly.

When Brown attempted to testify as to what Victim told him, defense counsel objected that such statements constituted hearsay. The court sustained this objection.

The prosecutor then asked Brown if Victim named who he believed assaulted him, and again, defense counsel objected on hearsay grounds. The court likewise sustained this objection. Thereon, Brown testified that Victim was taken to a hospital for treatment. Before following Victim to the hospital to talk with him further, he found Victim's wallet on the kitchen floor.

Without objection, Brown next testified to the following, which forms the basis of Defendant's hearsay claim. After speaking with Victim at the hospital, Brown "went to a secondary location to locate the first suspect in the crime." This "first suspect" was Rachel Haynes. After talking with Haynes, Brown developed another suspect, namely Defendant. After contacting Defendant at his home, he arrested Defendant and informed him of his constitutional rights per the *Miranda* warnings. After Defendant waived his rights, Brown questioned him about his involvement in the robbery of Victim.

From the foregoing, Defendant argues reversible error resulted when the State was allowed to introduce inadmissible "inferential hearsay." *See State v. Valentine,* 587 S.W.2d 859 (Mo.banc 1979). As we understand it, Defendant would have us characterize as "inferential hearsay" Brown's testimony that his interview with Victim at the hospital led him to his first suspect (Haynes) and that his discussion with her led him to his second "suspect," Defendant. With that as his premise, Defendant relies on *Valentine* to urge reversal, arguing that without this so-called inadmissible "inferential hearsay," the State

failed to make a submissible case.[2] We disagree for multiple reasons.

■ First, Defendant failed to object to that part of Brown's testimony which he claims was impermissible "inferential hearsay." Specifically, Brown's testimony that his interview with Victim led him to Haynes which in turn led him to Defendant came in without objection. "Inadmissible hearsay that goes in the record without objection may be considered by the fact-finder in determining the facts." *State v. Crawford*, 68 S.W.3d 406, 408[8] (Mo.banc 2002).

Second, if defense counsel had timely objected to what Defendant now characterizes as inferential hearsay, no error would have resulted from overruling the objection. This follows because the alleged inferential hearsay testimony fails to meet the *Valentine* criteria, i.e., Brown's testimony "by clear inference, showed that [Haynes] had implicated the defendant in the offense" against Victim. *See* note 2. The essence of the *Valentine* decision was that there was no other way for the police to (so quickly) suspect the defendant other than through the co-conspirator's statements. That is not the situation here.

In this case, Brown unequivocally testified that his probable cause to arrest Defendant came from sources in addition to the information he learned from Haynes. Specifically, Brown testified that his decision to arrest Defendant was "[b]ased on the totality of the circumstances, what I observed when I first arrived [at Victim's home], the injuries to the victim ... his statement ... the statements of Ms. Haynes." From this, other reasonable inferences could be drawn besides the possibility that Haynes implicated Defendant in the offense against Victim. Thus, it is just as reasonable to infer that Haynes admitted both she and Defendant were at Victim's house, but that they only used his telephone and borrowed money from him. It is also reasonable to infer, from this and Victim's statement and appearance, that once Haynes placed Defendant and her at Victim's house, Brown opted to arrest both Haynes and Defendant in an effort to learn which one (or both) committed the crime.

■ When different inferences can be drawn from the evidence, the *Valentine* inferential hearsay rule does not attend. *State v. Lee*, 841 S.W.2d 648, 652–53 (Mo. banc 1992); *State v. Sykes*, 611 S.W.2d 278, 281–82 (Mo.App.1980). That is the situation revealed by this record; consequently, Defendant's claim that inadmissible hearsay is the only way the State made a submissible case lacks merit.[3]

---

2. The inferential hearsay rule is one of limited application. It is generally involved in cases wherein there are co-conspirators or co-actors in a crime. *Valentine*, 587 S.W.2d at 860–61. Thus, when a witness—such as an investigating officer—attempts to testify that after talking with the co-actor, he or she applied for a warrant against the co-actor and no other testimony inculpates this person, the "warrant application" testimony should be excluded (upon timely objection) as impermissible hearsay. *Id.* In explaining this, the *Valentine* court quoted from *State v. Edwards*, 435 S.W.2d 1, 6 (Mo.1968), as follows:

"'[T]estimony which, by clear inference, showed that an alleged accomplice had implicated the defendant in the offense involved, was just as much hearsay and objectionable as the implicating statement itself would have been.... [T]he extrajudicial statement of a third person [that] was attempted to be used as evidence of the guilt of the accused, [is] a clear-cut hearsay violation.'"
*Valentine*, 587 S.W.2d at 861.

3. When offering the challenged testimony, the prosecutor told the trial court that it was not being offered for the truth. In fact, the concern of defense counsel at trial was the *content* of the statements, not any alleged inferential hearsay risk. On this record, the general

Third, assuming *arguendo*, that the alleged inferential hearsay should have been omitted if objected to, reversal would follow only if admission of such evidence prejudiced Defendant. "On direct appeal, this Court will review the trial court's determination not for mere error, but for prejudice and will reverse the conviction only if the error is so prejudicial as to deprive the defendant of a fair trial." *State v. Dismang*, 151 S.W.3d 155, 161[4] (Mo.App.2004). Because this is a court-tried case, we presume the trial judge disregarded any improperly admitted evidence in reaching the verdict. *State v. Clay*, 909 S.W.2d 711, 716 (Mo.App.1995); *State v. Rank*, 849 S.W.2d 230, 232–33 (Mo.App.1993). Consequently, "[w]here a judge, rather than a jury, is the trier of fact, the reviewing court presumes that inadmissible evidence is not prejudicial." *State v. McMillin*, 783 S.W.2d 82, 96 (Mo. banc 1990).

Accordingly, the question becomes: Was there ample evidence from which the trial judge could have found each element of the crimes beyond a reasonable doubt without considering what Defendant characterizes as inferential hearsay? We answer, "yes." The trial judge reasonably could have inferred that the only persons present at the time of the robbery were Victim, Haynes, and Defendant. Based on Victim's testimony that the "guy" sitting at his table was the one who hit him with the tire iron, the court also reasonably could

have inferred that it was Defendant who struck Victim, not Haynes as Defendant asserted. Additionally, Victim testified repeatedly that it was "he" (the "guy") who took all his money and papers, except five dollars. On that point, Victim's testimony was consistent.

Although Victim had trouble hearing questions at the time of trial and obviously had memory problems, he was clear on one crucial issue, namely, that a "*guy* hit me on the head and took my money." (Emphasis supplied.) Victim's certainty on this point, coupled with other evidence and reasonable inferences that could be drawn therefrom (as outlined above), was sufficient to support a conviction of Defendant for first-degree robbery and armed criminal action. As such, Defendant cannot show prejudice from any alleged error in the admission of evidence. Such error, if any, was immaterial to the merits of the action; consequently, the judgment must be affirmed. Rule 84.13(b). Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BARNEY, J., concur.

---

rule is applicable, i.e., the testimony was merely offered to show the officer's subsequent conduct which is admissible. *State v.* *Edwards*, 116 S.W.3d 511, 532–33 (Mo.banc), *cert. denied*, 540 U.S. 1186, 124 S.Ct. 1417, 158 L.Ed.2d 92 (2004).