**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Stevie A. FLOYD, Defendant-Appellant.**

**No. 40674.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 18, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 18, 1980.

Application to Transfer Denied
June 10, 1980.

James F. Booth, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Bruce E. Anderson, Lew A. Kollias, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

A jury found defendant, Stevie A. Floyd, guilty of murder in the second degree and the court sentenced him to twenty years imprisonment. Defendant appeals.

The evidence adduced at trial tended to show that on July 10, 1977 at dusk the defendant Floyd accompanied by Jackey Watson left a party, given by Bonnie Barkley, in an angry mood. Floyd, stating that he "wanted to get that son-of-a-bitch" left with Watson carrying a pistol and a shotgun.

Mr. Faul testified that on July 10, 1977, he was employed as a security guard at a produce market located at North Market and Second Street. On that evening at "dusk" Mr. Faul heard a gunshot blast. He immediately turned and saw a station wagon leaving by way of Market toward Broadway. Mr. Faul stated that he could tell that there were two people in the station wagon but was unable to describe them. The witness noted the license number of the station wagon which was later found to be registered to the defendant.

Mr. Taylor, another witness for the State, testified that he was also at the produce market on July 10, 1977 at dusk. He saw a station wagon backing down North Market following the victim. Two armed white men emerged from the automobile. One of them fired a shotgun at the victim causing his death. The two men got back into the station wagon, immediately leaving the scene. Another witness who was on produce row that day testified that he saw a black man running down Market being followed by a station wagon. Two white men got out of the automobile each of them armed. The witness heard several shots fired, one of them a shotgun blast. The two white men then left in the station wagon.

The defendant and Watson returned to the party. Bonnie Barkley testified that the defendant handed her a warm shotgun and told her to hide it. He stated he knew "that they got that black son-of-a-bitch because . . . they blowed the back of his head off."

Defendant's first point on appeal is that the trial court erred in refusing to submit an alibi instruction to the jury.

The defendant contends that the testimony given by Bernadine Flieger, a witness

for the State, supports his requested alibi instruction. Ms. Flieger stated that she was also a guest of Bonnie Barkley's the day of July 10, 1977, although she could not remember what time she arrived at the party. During the course of the party, Ms. Flieger left twice to visit the neighborhood grill. The first time she went she stayed approximately thirty to forty-five minutes. It was daylight when she left the party to go to the grill and it was still daylight when she returned. Ms. Flieger stated that it was still daylight when she went to the grill the second time but dark when she returned to Bonnie's party. Ms. Flieger later contradicted her testimony by stating that it was still light when she returned from the grill the second time. She stayed "a few minutes" at the party then went home. Ms. Flieger testified that she saw the defendant at the party before she went to the grill the first time, after her return and again after she returned from the grill the second time. She "thought" the defendant was still there when she left the party.

All that we can presume from this testimony is that Ms. Flieger did not see the defendant leave the party. This conclusion is not helpful to the defendant particularly in light of Ms. Flieger's own statement that she could not remember what time she had arrived at the party, what time she went to the grill, how long she remained there or exactly when she went home. Ms. Flieger was vague and self-contradicting on the issue most crucial to defendant's alibi, that of the light conditions upon her return from the grill the second time. If it was light when she returned from the grill and if she remained at the party until after dark as she testified at one point, this would have perhaps given defendant an alibi provided she could testify that he did not leave the party at one point during this time. She did not, however, testify as to defendant's continued presence at the party. Evidence which may account for the defendant's presence during only a part of the time in which a crime could have been committed will not support an alibi instruction. *State v. McLane*, 55 S.W.2d 956, 958 (Mo.1932).

If it was light when Ms. Flieger left the party for the grill and dark when she returned, as she so stated at another point in her testimony, defendant could have easily driven the sixteen blocks to the scene of the murder and returned to the party during dusk. This testimony is so contradictory on facts necessary to defendant's alibi that it lacks any probative force as to these issues. *State v. Lawrence*, 566 S.W.2d 243, 246 (Mo.App.1978). The defendant did not attempt on cross-examination to clarify this contradiction to his benefit and the testimony, as it appears on the record, does not constitute evidence of alibi sufficient to raise a reasonable doubt as to defendant's participation in the crime. *State v. Reynolds*, 517 S.W.2d 182, 184 (Mo.App.1974). Point one is ruled against defendant.

Defendant's second claim is that the trial court erred in overruling defense counsel's objection to the prosecutor's statement in argument that if defense counsel believed Ms. Barkley's testimony to be false he should have called Forrest Watson, Jackey Watson's father, who was also present at the party to rebut her testimony. Defendant alleges error because Forrest Watson was equally available as a witness to both the State and the defense and that the adverse inference drawn by the jury as a result of counsel's argument was improper. The issue of equal availability is resolved by considering three factors: (1) the one party's superior ability to know or identify the witness, (2) the nature of the testimony that the witness may be expected to give, and (3) the relationship between the particular party and the witness which indicates that the witness would be more likely to testify more favorably for one party than another. *State v. Collins*, 350 Mo. 291, 165 S.W.2d 647, 649 (1942); *State v. Ganaway*, 556 S.W.2d 67, 69 (Mo.App.1977).

In the instant case the defendant was in a position superior to that of the State's to call Forrest Watson as a witness as he was allegedly present at Ms. Barkley's party the same evening as was defendant.

The nature of the testimony that the witness could be expected to give is apparent from the relationship between the defendant, the alleged co-actor, Jackey Watson and his father, Forrest Watson. The evidence indicated that Jackey Watson was intimately connected in the commission of the crime giving rise to a common interest between Jackey Watson and the defendant. See, *State v. Wilkerson*, 559 S.W.2d 228, 229 (Mo.App.1977). Because of this common interest between the defendant and Jackey Watson any alibi testimony which could have been given by Forrest Watson favorable to his son would have also been favorable to defendant. In such a situation a logical inference arises that Forrest Watson was not called to testify because his testimony would have damaged the defendant's cause. The case of *State v. Valentine*, 587 S.W.2d 859 (Mo.1979), specifically referred to by defendant is not applicable to the instant case. In *Valentine*, the witness was determined to be equally available to both parties because there was no relationship shown between the defendant and the witness which could have given rise to a common interest. Failure to call this witness gave rise to no logical inference that his testimony would have been unfavorable to defendant's cause.

In addition, it must also be noted that the prosecutor's alleged improper statement was made during the rebuttal portion of his argument. Defense counsel, in his argument inferred that Bonnie Barkley's testimony was not credible due to lack of memory. The prosecutor's comment was justified as a proper answer to defendant's comment that Bonnie Barkley was not a credible witness. Thus the defendant cannot be heard to complain.

Defendant's third point on appeal is that the trial court erred in overruling defendant's objection to the prosecutor's argument that the defendant could have used his power of subpoena to call Forrest Watson as an impeaching witness if the defendant believed that Ms. Barkley was testifying falsely. Defendant assigns this as error on the ground that such argument by counsel shifted the burden of proof from the State to the defendant. We disagree.

It is well settled that a comment by the prosecutor on the defendant's failure to testify would be improper, however, there is no error when the prosecutor refers to the fact that the defendant has failed to call witnesses. *State v. Cabell*, 539 S.W.2d 584, 588 (Mo.App.1976). This was merely a comment on the evidence adduced at trial and made no reference to the failure of the defendant to testify. *State v. Jenkins*, 516 S.W.2d 522, 528 (Mo.App.1975).

We find defendant's third point without merit.

Judgment affirmed.

CRIST and REINHARD, JJ., concur.