**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Daniel J. CHEVALIER,
Defendant-Appellant.**

**No. WD 31923.**

Missouri Court of Appeals,
Western District.

Sept. 22, 1981.

Willard B. Bunch, John Edward Cash, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Suzanne M. Boersig, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, C. J., KENNEDY, P. J., and SHANGLER, J.

SOMERVILLE, Chief Judge.

Defendant was charged with stealing property having a value in excess of $150.00, a class C felony. Section 570.030, RSMo 1978. A jury found defendant guilty as charged and assessed his punishment at thirty days imprisonment in the Cass County jail. Judgment entered and sentence imposed accordingly.

Defendant confines himself on appeal to two points of error, both of which may be sharply drawn in form of questions. Did the trial court err in refusing to give Instruction No. 12 (MAI–CR 2d 3:30, Alibi) requested by defendant? Did the trial court err in failing to give of its own volition an instruction adapted from MAI–CR 2.37.1(4) by reason of defendant's purported injection of evidence of a "special negative defense"? The significance of the legal issues on appeal is noticeably disproportionate to the sentence handed down.

As the sufficiency of the evidence to support the guilty verdict stands unchallenged, the following compilation of the evidence will focus principally upon the precise issues raised on appeal.

According to the state's evidence, the Kansas City Southern Railroad, on September 5, 1979, was the owner of approximately 3500 railroad ties stored on its right-of-way along a mile and three-quarters stretch of its track running south of the "Jaudon Store" in Cass County, Missouri. This stretch of Kansas City Southern Railroad track paralleled Holmes Road and lay approximately four miles southwest of Belton, Missouri.

On September 10, 1979, at a point one-half mile south of the "Jaudon Store", ap-

proximately 176 railroad ties were discovered missing from where they had been stored on the railroad right-of-way.[1] The missing railroad ties were readily identifiable as they were new and had "KCS–79" stamped on one end and "127" stamped on the other end. They were valued at $17.00 per tie.

On September 10, 1979, defendant contacted a man in Belton, Missouri, and sold him some of the missing ties with which to build a "retaining wall". Defendant, during the course of doing so, told the man he had approximately 160 ties "which had never been run over by a train."

Following an investigation by the Cass County Sheriff's Office and a special agent of the railroad, 28 of the missing ties were found at and removed from defendant's home in Belton, Missouri.

A single witness was presented by defendant. This witness testified that he was a friend of long-standing of defendant and was with him from approximately 9:00 P.M. on the evening of September 9, 1979, to approximately 2:30–3:00 A.M. on the morning of September 10, 1979. The two spent part of this time in a cocktail lounge. They left the cocktail lounge at approximately 12:30 A.M. on September 10, 1979, in defendant's "short bed" truck. While proceeding along Holmes Road they noticed some railroad ties partially on the travel portion of the road and partially in a ditch along the side of the road. They stopped to remove the railroad ties from the travel portion of the road. The railroad ties appeared to be new and unused. It was then decided to take the railroad ties to defendant's home because defendant "figured he could use them . . . over at his house." Three trips, carrying nine or ten railroad ties per trip, were made to defendant's home. Defendant's friend was dropped off at his home at approximately 2:30–3:00 A.M. on September 10, 1979.

Defendant's two points on appeal appear to be theoretically incompatible. On the one hand, defendant claims the trial court erred in not giving his requested alibi instruction, and, on the other hand, claims the trial court erred in failing to give of its own volition MAI–CR 2d 2.37.1(4) by reason of defendant's injection of purported evidence of a "special negative defense". Defendant, without reservation or mention of any distinguishing characteristics, relies on his friend's testimony in toto to support both points.

■ In theory, the defense of alibi rests on the proposition that if the nature of an offense is such as to require an accused's presence at the scene of the crime he cannot be found guilty if he was in fact elsewhere at the time. Conversely, if the state fails to prove that the accused was present at the scene of the charged offense at the time of its occurrence, when, without accused's presence, it would be impossible to find him guilty of the charged offense, the state has failed to prove an essential element of its case. *State v. Hubbard*, 351 Mo. 143, 171 S.W.2d 701 (1943). The burden rests on the state, under circumstances just described, to affirmatively prove an accused's presence at the scene of the charged offense; hence, no burden rests on an accused to prove an alibi defense. *State v. Reece*, 324 S.W.2d 656, 661 (Mo.1959).

By way of contrast, defendant's second claim of error, predicated on the trial court's failure to instruct the jury in conformity with MAI–CR 2d 2.37.1(4), ostensibly proceeds on the theory that although defendant took the railroad ties, albeit from a location different from that shown by the state's evidence, he did so under circumstances which negated the requisite intent to steal.

In summation, the defense of alibi in a pure theoretical sense, addressed with reference to larceny, disclaims any taking of property as the accused was allegedly not present at the time and place the offense occurred, while a special negative defense in a pure theoretical sense, addressed with reference to larceny, assumes an accused's

---

1. The information charged that the offense occurred "on or about September 10, 1979". No motion was filed by defendant for a bill of particulars. Rule 23.04.

presence at the time and place the offense occurred under circumstances which allegedly negate the requisite intent to steal.

■ Taking cognizance that the two points of error advanced by defendant rest on separate and distinct theories, defendant's first point lends itself to being disposed of on the ground that the evidence relied upon was theoretically inconsistent with the defense of alibi and, at best, merely purported to explain the whereabouts of the railroad ties when defendant took possession of them. See *State v. Dale-Williams*, 17 N.C.App. 121, 193 S.E.2d 306 (N.C.App.1972).

■ Even if the evidence relied on by defendant was not theoretically inconsistent with the defense of alibi, it accounted for defendant's presence for only a part of the time during which the larceny in question was alleged to have been committed. The information charged that the offense occurred "on or about September 10, 1979". The evidence failed to account for defendant's whereabouts after 2:30–3:00 A.M. on the morning of September 10, 1979. Evidence which accounts for an accused's presence for only a part of the time during which a criminal offense could have been committed will not support an alibi defense. *State v. McLane*, 55 S.W.2d 956, 958 (Mo. 1932); *State v. Floyd*, 598 S.W.2d 517, 519 (Mo.App.1980); and *State v. Franklin*, 591 S.W.2d 12, 14 (Mo.App.1979).

Having concluded that the evidence, for any one of several reasons, did not support defendant's alibi defense, the trial court did not err in refusing to give defendant's requested alibi instruction. *State v. McLane, supra; State v. Floyd, supra;* and *State v. Franklin, supra.*

Whether or not the trial court erred in not giving MAI–CR 2d 2.37.1(4) also turns

on the evidence. Defendant, in an argument notable for its brevity and sweeping generalities, appears to contend that the evidence he presented afforded a basis from which the jury could find that he believed that the railroad ties were either abandoned or lost. Although not expressed by defendant in so many words, a logical extension of this argument being that a belief on defendant's part that the railroad ties were either abandoned or lost would negate an intent on his part to "appropriate property . . . of another with the purpose to deprive him thereof . . . without his consent." Section 570.030, RSMo 1978. According to the defendant, the evidence which he presented injected a special negative defense,[2] and MAI–CR 2d 2.37.1(4), captioned "Mistake Negativing Required Mental State", was the appropriate instructional vehicle for submitting same. Defendant makes no mention of MAI–CR 2d 2.37.3(2). Comment 4 to MAI–CR 2.37.1(4) points out the close affinity between the two instructions and suggests that defendant's second point, due to the tenor of its supporting argument, may have been more appropriately cast in terms of MAI–CR 2d 2.37.3(2). Be that as it may, even if defendant had referred to MAI–CR 2d 2.37.3(2) rather than MAI–CR 2d 2.37.1(4), doing so would not have changed the ultimate result reached in this case.

Rule 28.02(a) provides, in part, as follows: "The court must give MAI–CR 2.03. Other MAI–CR instructions in the 2.00 Series must be given, whether requested or not, where applicable under the law to the facts." Thus, it is immaterial whether defendant requested the trial court to give MAI–CR 2d 2.37.1(4) if it was supported by the evidence.

---

2. "Special negative defense" is defined as follows in the "Notes on Use" appended to MAI–CR 2d 2.04: By 'special negative defense' is meant a defense (1) upon which defendant does not carry the burden of proof (self-defense, accident, claim to ownership or use of property, entrapment, etc.), (2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and (3) presenting a positive fact or set of circumstances, as distinguished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense (claim to ownership for example) or which, if found, would constitute a legal defense (self-defense, for example). Alibi is not a 'special negative defense.' "

"Abandon" in the sense of "abandoned property" was judicially defined in *St. Louis Dairy Co. v. Northwestern Bottle Co.*, 204 S.W. 281, 283 (Mo.App.1918), as meaning " 'a conscious purpose on the part of the owner of personal property to so treat the same as to manifest an intention to thereafter neither use nor retake it into his possession. Where the owner of personal property either throws it away himself, or knowingly permits another to throw it away, having no intention to either again use, or take such property back into his possession, such acts constitute abandonment; and if another person finds the property so abandoned and takes the same into his possession he has the right to hold the same even as against the original owner, who has abandoned it.' " In view of this definition, a special negative defense predicated on a belief that abandoned property was appropriated appears to be statutorily recognized in Section 570.070, RSMo 1978,

"570.070. *Claim of right.*—1. A person does not commit an offense under section 570.030 if, at the time of the appropriation, he

(1) Acted in the honest belief that he had the right to do so; . . .

2. The defendant shall have the burden of injecting the issue of claim of right."

A special negative defense predicated on a belief that lost property was appropriated is statutorily recognized in Section 570.060, RSMo 1978,

"570.060. *Lost property.*—1. A person who appropriates lost property shall not be deemed to have stolen that property within the meaning of section 570.030 unless such property is found under circumstances which gave the finder knowledge of or means of inquiry as to the true owner.

2. The defendant shall have the burden of injecting the issue of lost property."

■ Legal recognition of a special negative defense and evidence to support its submission to a jury are distinct matters and the latter does not inexorably follow

the former. A glaring fallacy in defendant's case is the lack of evidence. This undoubtedly accounts for the fact that defendant has studiously avoided taking a firm position as to whether he claims to have believed the railroad ties were lost or abandoned property. This court concludes, after carefully scrutinizing the evidence relied upon by defendant, that it neither directly nor by inference supported a belief by defendant that the railroad ties were either abandoned or lost property at the time he took possession of them. Any other conclusion would rest on the tenuous grounds of speculation and conjecture. Fairly summarized, defendant and his companion, as they were driving home from a cocktail lounge, came upon some railroad ties partly on the travel portion of the road and partly in a ditch along the side of the road. They initially stopped for the purpose of removing the railroad ties from the travel portion of the road. However, after stopping, defendant decided to take the railroad ties because he "could use them . . . over at his house." The obvious value of the railroad ties, the fact that they were new, and a total lack of evidence, direct or circumstantial, indicative of a belief on defendant's part that the railroad ties were abandoned property, precludes the existence of an evidentiary basis to support a special negative defense on the theory of abandoned property.

There was also a total lack of evidence, direct or circumstantial, indicative of a belief harbored by defendant that the railroad ties were lost property. The fact that the railroad ties were new and marked "KCS–79" is antithetic to any reasonable inference that they were lost property within the meaning of Section 570.060, RSMo 1978. Even the most rudimentary investigation on defendant's part in the Belton area would have revealed that railroad ties so marked were the property of the Kansas City Southern Railroad which ran through the area.

There was simply no evidence to support defendant's belated cry of a mistaken belief at the time of the offense that the railroad

ties were either abandoned or lost property. The fact that defendant himself was unable to come to grips with whether the thrust of his argument should be that the railroad ties were abandoned as opposed to lost, or vice versa, eloquently demonstrates that the evidence relied upon supported neither as a bona fide belief.

Judgment affirmed.

All concur.