**STATE of Missouri, Respondent,**

v.

**Linwood BUTLER, Jr., Appellant.**

**No. WD 34436.**

Missouri Court of Appeals,
Western District.

Jan. 10, 1984.

J. Armin Rust, Regional Public Defender, Lexington, for appellant.

John Ashcroft, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.

SHANGLER, Judge.

The defendant was found guilty by a jury of the crime of burglary in the second degree [§ 569.170, RSMo 1978], was found to be a prior offender [§ 558.016], and was sentenced by the court to a term of seven years imprisonment. The defendant contends there was no sufficient evidence to convict, and that the instructions to the jury were faulty.

On October 29, 1981, Howard, a foreman at National Byproducts, drove by the premises of employment at about 5:30 p.m., after work, and saw a truck backed up to a door of one of the storage buildings. The structures were some 400 feet off the highway and accessible by a private road. Howard drove down the road and to the plant office and told manager Riley. The manager and one Kard drove to the storage building and Howard followed. Riley dispatched Howard to the plant to call the sheriff. Howard returned to the storage building and then, in the company of Riley and Kard, he saw two other persons: the defendant Butler and one Wright. Howard then heard the defendant say to manager Riley: "I'm not going back to the joint for that junk"—or words to that effect. Howard also identified some items kept in the storage building which were loaded into the back of the truck.

The general manager Riley testified that when he arrived at the storage building he identified the property in the truck as goods which had been stored in the building, and some of the property—a trunk—belonged to him. When he first arrived at the storage building, Riley saw a single person—one Wright—a former employee dismissed by National Byproducts. There was nothing in the building that belonged to Wright, nor was he given authority to enter the building for any reason, nor to take any of the Riley personal property. In minutes after Riley arrived, Riley saw the defendant Butler—whom he did not know—hiding behind the truck in the building. Riley testified that he had issued no authority to defendant Butler to enter the building or to remove any property from the building. A conversation between Riley and former employee Wright ensued, in the course of which Riley indicated that

there was theft from the premises the week before and that he was determined to learn who that was. In the course of that conversation, the defendant Butler remarked [as reported by Riley]: "He had no question with what was going on here and was not—he was not going to do time for the junk that was in the truck." The defendant suggested [as reported by Riley]: "[W]e should just forget the whole thing and that he would go on his way and I would go on mine." Riley refused.

Kard, the fleet supervisor, testified that he also saw the defendant Butler inside the building on that night, and also the pickup parked halfway into the structure. He heard the defendant tell the manager Riley that "he wasn't going to do any time for taking some junk." Kard testified also that the building was then normally closed and locked. When he arrived at the storage building that night, the lights on the pickup truck were not illuminated, but there were lights on in the interior of the building.

The defendant Butler gave testimony. He drove to the Wright residence on the afternoon of the event to visit his girlfriend, sister-in-law to Wright. A short time thereafter, Wright, was then in a state of semi-inebriation, asked Butler to drive him "to get a sawhorse and some stuff" to take to the home of an uncle. Butler complied without questions and drove to a building by means of a private road some hundred yards off the highway. Butler stopped the vehicle—a pickup truck—and then backed it up to the building. Wright opened the doors, and Butler backed the truck into the building. Butler got out to look around, and Wright commenced to load a ladder, sawhorses and other things onto the truck. When they arrived at the premises, it was still daylight. Butler never inquired of Wright whether or not he had permission to enter the premises and cart the property away. When they arrived, the doors to the building were two to three feet ajar. He saw no signs to warn not to trespass or that they were upon private property. He had no indication anything was amiss and the first

indication that he had no right to be there was when Riley gave instructions to summon the sheriff. Butler admitted the remark: "I aint going to do no time for taking junk."

 A person who knowingly enters or remains unlawfully in a *building or inhabitable structure* for the purpose of committing crime is guilty of burglary in the second degree. § 569.170. A person who knowingly enters or remains unlawfully in a *building or inhabitable structure or upon real property* is guilty of the crime of trespass in the first degree. § 569.140. Thus, burglary in the second degree presupposes an incursion into a *building or inhabitable structure*, whereas trespass in the first degree presupposes *either* incursion into a building or inhabitable structure *or* upon real estate. It is self-evident, therefore, that burglary in the second degree encompasses that species of trespass in the first degree which proscribes the unlawful and knowing entry or remainder in a building or inhabitable structure. *State v. Neighbors,* 613 S.W.2d 143, 146[1] (Mo.App.1980).

The defendant argues that since burglary second degree encompasses trespass in the first degree and since there was no evidence that either he or participant Wright knowingly entered the building unlawfully—that is, committed a trespass—the offense charged [burglary second degree] was not proved.

To sustain argument that there was no trespass and hence no burglary, the defendant argues the effect of § 569.140.2. The full text of trespass in the first degree § 569.140 provides:

1. A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure *or upon real property.*

2. *A person does not commit the crime of trespass in the first degree by entering or remaining upon real property* unless the real property is

fenced or otherwise enclosed in a manner designed to exclude intruders or as to which notice against trespass is given by:

(1) Actual communication to the actor; or

(2) Posting in a manner reasonably likely to come to the attention of intruders.

3. Trespass in the first degree is a class B misdemeanor. [emphasis added].

It is the sense of this argument that since there was no evidence of personal communication to either the defendant or to Wright not to enter, or that the property was private, or of a posted notice against trespassers, the crime of trespass in the first degree was not proven, and perforce neither was the inclusive charge of burglary in the second degree.

■ That argument miscegenates disparate definitions of offense and so misdirects inquiry. A trespass in the first degree, as we note and as the statute declares, is committed either when the actor *either* knowingly enters or remains unlawfully in a building or inhabitable structure *or* upon real property. The crime of burglary requires proof of incursion into a structure; an unlicensed entry upon open real property for whatever unlawful purpose does not constitute burglary. Thus, it is only that species of trespass which entails the unlawful and knowing entry into a structure which is subsumed in the offense of burglary, and so is incidentally proven by evidence of the inclusive offense. The section the defendant seeks to assert—subsection 2 of trespass in the first degree § 569.140—appertains only to *real property* as contradistinguished from a *building or inhabitable structure*. There was no burden on the prosecution to prove as the trespass element of the burglary submission that the defendant was given notice against trespass in the manner prescribed by subsection 2 of the statute. That proof is imposed upon the state only under subsection 2 of the trespass statute, that is: only "if property is *something other than a building or inhabitable structure*."

Comment to 1973 Proposed Code, § 569.150 [Trespass in the second degree]. *See also* The New Missouri Criminal Code: A Manual for Court Related Personnel, Comments § 14.18 (1978). The trespass encompassed in the burglary was the unlawful and knowing entry into a building, and hence the conditions of proof imposed by subsection 2 were not incumbent upon the prosecution for conviction of the offense charged.

■ [The condition that the prosecution prove the subsection 2 elements of trespass in the first degree as a component of burglary in the second degree may appertain also when the initial entry into a building or upon land was upon premises open to the public—or with other license—but where the license or privilege since has expired. *See* The New Missouri Criminal Code: A Manual for Court Related Personnel, § 14.19 Introduction to Burglary (1978). *See also* § 569.010(8), definition of "enter unlawfully or remain unlawfully." There was no evidence, nor contention, that the National Byproducts premises were open to the public or that there was other license or privilege for the defendant to be upon that real property or in a premises building under those auspices.]

The defendant contends next that the court neglected to submit, sua sponte, MAI–CR2d 2.37.1(3) & (4) required by the Notes on Use to be given where the evidence indicates "the defendant held a belief which, if true, would negative an element of the crime." The defendant contends that the failure to instruct on the issue of mistake negativing the required mental state was among those denominated by MAI–CR2d as "instructions required to be given whether requested or not," so that the lack of such a submission was a misdirection and open to review for plain error. The assertion was not preserved. The burglary in the second degree definition, § 569.170, requires the mental state that the defendant *unlawfully and knowingly* entered the building *for the purpose of the commission of a crime.* It is the theory of the defendant that the evidence was that

he was an unwitting participant, that neither he nor Wright had knowledge that they acted on the National Byproducts premises without permission.

■ Section 562.031, *Ignorance and mistake,* provides:

1. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact or law unless such mistake negatives the existence of the mental state required by the offense.

. . . . .

3. The burden of injecting the issue of reasonable belief that conduct does not constitute an offense under subdivision (1) ... is on the defendant.

MAI–CR2d 2.37.1 formulates that principle into a jury instruction. *See* Notes on Use 1. The statute imposes upon a defendant the burden to inject the issue of mistaken belief. That burden is not met by statements of the defense which self-serve, but nothing more. Here there was nothing more. In *State v. Quisenberry,* 639 S.W.2d 579 (Mo. banc 1982), in contention was whether a *claim of right* [§ 570.070] was a submissible issue. The defendant was charged with burglary in the second degree and stealing as an aider. The principal, Hook, testified that he entered the premises and took the property because the owner of the goods owed him money and Hook, accordingly believed he had the right to do so to acquit the debt. Our Supreme Court gave opinion [l.c. 584[8, 9]] that "[i]f the unadorned self-serving statements of the defendant or principal were sufficient to 'inject the issue,' there would be virtually no evidentiary burden on the defendant." The proof required to submit the issue is sufficient evidence—apart from the subjective belief of a defendant or principal—"to enable the court to infer that the relevant person *honestly* held that belief."

■ The claim of *mistaken belief,* asserted here, and that of *claim of right,* adjudicated in *Quisenberry* are akin. Each goes to negative a mental state essential

for conviction, and each imposes upon the defendant the burden to inject the issue. The barren statements by defendant Butler that there was no reason to suspect the incursion onto the premises and into the building to remove the property was without permission and that he had no intent to steal do not suffice as substantive evidence of mistaken belief. The evidence that the doors were closed and locked, that none of the management had given Wright permission to enter or to take any property, that none of the property inside the building or taken by Wright was his possession, the statement by the defendant [admitted]: "I ain't going to do no time for taking junk," all are substantial evidence of a knowing and unlawful entry for the purpose of stealth. There is no substantial evidence of conduct under mistaken belief. The issue was not submissible.

■ The final contention of error also deals with instruction and also was not preserved for review. The defendant requests our decision nevertheless under plain error Rule 30.20. The complaint is that the verdict-director is redundant and so, irregular. The defendant cites the effect of Rule 28.02(e) that an instruction given in violation of the rule or of an applicable Note on Use constitutes error, the prejudicial effect to be judicially determined. The liability of the defendant was submitted by verdict-director Instruction No. 7:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 29, 1981, Gregory Wright with the aid or attempted aid of defendant committed the offense of burglary in the second degree of the National By-Products building located at RFD, Blackwater, Missouri, and

Second, that the defendant, either before or during the commission of the offense of burglary in the second degree with the purpose of promoting its commission, aided or attempted to aid such other person in committing or attempting to commit that offense, and

Third, that on or about October 29, 1981, in the County of Cooper, State of Missouri, the defendant or Gregory Wright knowingly entered unlawfully in a building located at RFD, Blackwater, Missouri, and possessed by National By-Products, Inc., and

Fourth, that the defendant or Gregory Wright did so for the purpose of committing the crime of stealing therein, then you will find the defendant guilty of burglary in the second degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these proposition (sic), you must find the defendant not guilty of that offense.

A person commits the crime of stealing if he appropriates property or services of another with the purpose of depriving him thereof, either without his consent or by means of deceit or coercion.

The defendant makes the essential complaint that the instruction improperly conjoins the liability of an aider and abettor with that of a principal actor and is otherwise errant in that MAI–CR2d 2.12 requires the submission of the first two paragraphs only. Instruction No. 7 combines the liability for burglary in the second degree with the culpability of the defendant as an aider and abettor for the responsibility of Wright. The propositions First and Second submit the aider and abettor theory, and the propositions Third and Fourth submit the substantive burglary in the second degree offense. The defendant does not say how any of these components confuses the liability of an aider and abettor with that of a principal. The trial was conducted on April 27, 1982, so the March, 1979 promulgation of MAI–CR2d 2.12 governed the submission. Notes on Use 5 to that edition, to be sure, directed that: "If MAI–CR 2.12 is used, the court must give a separate instruction definition the offense initially contemplated"—in this case, burglary in the second degree. [*But see* MAI–CR2d 2.12, Notes on Use 6, February, 1983 edition]. That Instruction No. 7 combined the aider and abettor feature of 2.12 with the substantive offense burglary in the

second degree model 23.52 to formulate a four proposition verdict-director rather than separate instructions, however, could not result in prejudice—not to say, a manifest injustice. *State v. Simpson*, 614 S.W.2d 31, 33[3] (Mo.App.1981); *State v. Clark*, 607 S.W.2d 817, 820[5] (Mo.App. 1980). Instruction No. 7 conforms with the substantive requirements of both MAI–CR2d 2.12 and 23.52 and, apart from the structural impropriety noted, satisfies the requirements of the law.

The judgment is affirmed.

All concur.