STATE of Missouri, Respondent,

v.

Harlan Gene WILLIAMS, Appellant.

No. WD 36251.

Missouri Court of Appeals,
Western District.

June 25, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

Cullen Cline and Jean E. Goldstein of Butcher, Cline, Mallory & Covington, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, C.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for rape, in violation of § 566.030, RSMo Supp. 1983, and sodomy, in violation of § 566.060, RSMo Supp. 1983. The judgment is affirmed.

While appellant formally presents two points, in reality he presents variations on a single issue. In summary, it is alleged that the trial court erred in failing to submit MAI–CR2d 2.37.1.2, in failing to submit paragraph 4 of MAI–CR2d 20.02.1 and in failing to submit paragraph 4 of MAI–CR2d 20.08.1. It is appellant's assertion that these instructions must be given when there is evidence to support a mistake of fact defense which would negate an element of the crimes of rape and sodomy, to wit, the lack of consent.

There being no challenge to the sufficiency of the evidence to sustain appellant's conviction, a brief summary of the pertinent facts suffices.

The victim, a 17-year-old female, accompanied by a female friend, went to a tavern in Columbia, Missouri. Appellant, whom the victim had known for some five years, was at the tavern. It was suggested by appellant that the victim and her friend go to appellant's residence for a party. The victim and her friend declined. As the tavern closed and the victim and her friend were leaving, they changed their minds about appellant's suggestion. Directions to appellant's residence were acquired, along with the agreement that the victim and her friend would be there. The victim and her friend, in the latter's automobile, went to appellant's residence. Some 15–20 minutes later, appellant, with two other females, showed up. The five went inside appellant's residence. Shortly, the two females who brought appellant home departed. Another male arrived at appellant's residence, but after a brief stay he departed. Appellant had a cut near his left eye which was bleeding and which he suffered as a result of a fight when he had left the tavern. The victim and her friend tried to persuade appellant to seek medical treatment at a local hospital. In turn, he attempted to reach his brothers by phone. It was finally agreed that the victim's friend would drive separately, the victim and appellant would drive in appellant's automobile, and the three would meet in the parking lot of a local restaurant. The friend left appellant's residence with that understanding. Appellant and the victim never left appellant's residence.

Appellant went to an upstairs bedroom and continued to use the telephone. The

victim was asked by appellant to come to the bedroom. She proceeded to sit on the edge of the bed. During the first part of their conversation, appellant, over the protest of the victim, laid on top of the victim. The victim protested appellant's advances and exclaimed that appellant was hurting her shoulders. The victim retrieved a spoon from a bed stand and jabbed appellant in the back. This encounter ended. The victim continued to urge appellant to seek treatment for his injury. The conversation then turned to the victim's ability to defend herself against a rapist. Appellant at first suggested that the victim raise her sweater and bra to expose her breasts and lower her jeans. She refused and appellant became more insistent. Appellant then demanded that she do so and she complied. The victim, with jeans pulled down, was lying on her back with her legs at the knees extending over the end of the bed. Appellant once again, over the protest of the victim, committed an act of oral sex upon the victim, followed by his climbing on top of her to complete an act of sexual intercourse. Subsequently, the victim went home by taxi. She reported the incident to her parents. She was taken to and examined at a local hospital.

The medical expert testified that abrasions to the victim's vaginal area were, in his opinion, more likely the result of trauma then vigorous sexual intercourse. The appellant called one witness to testify to the fight encountered by appellant. While appellant did not testify, his previous written statement to investigating police officers was admitted into evidence. The jury returned its verdict, upon which judgment and sentence were entered. This appeal followed the overruling of timely-filed post-trial motions.

This court is asked to review and to overturn appellant's conviction upon the allegation that the trial court erred in failing, sua sponte, to instruct the jury with MAI–CR2d 2.37.1.2, paragraph 4 of MAI–CR2d 20.02.1, and paragraph 4 of MAI–CR2d 20.-08.1. It is appellant's assertion that these instructions were mandatory because the evidence supported a mistake of fact de-

fense which would negate an element of the crimes of rape and sodomy, to wit, the lack of consent by the victim.

The instructions referenced by appellant read as follows:

2.37.1 Mistake Negativing Required Mental State

.    .    .    .    .

2. Where mental state is required but statute does not specify the mental state or specifies recklessness as required mental state.

One of the issues (as to Count _____) (in this case) is whether the defendant acted recklessly with regard to [element of crime as to which there is evidence of mistaken belief on the part of the defendant]. The state has the burden of proving beyond a reasonable doubt not only that [element of crime] but also that the defendant acted recklessly with regard to [element of crime]. If the defendant believed [belief negativing element of crime], then he was not reckless as to [element of crime].

If you find that the defendant believed [belief negativing element of crime] or if you have a reasonable doubt as to whether he believed [belief negativing element of crime] or if you have a reasonable doubt as to whether the defendant was reckless as to [element of crime], then you must find the defendant not guilty (under Count _____).

20.02.1 Rape: Forcible Compulsion

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt: ...

(Fourth, that the defendant did not believe that [name of victim] consented to the intercourse, as submitted in Instruction No. _____,)

20.08.1 Sodomy: Forcible Compulsion

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt: ...

(Fourth, that the defendant did not believe that [name of victim] consented to

the deviate sexual intercourse, as submitted in Instruction No. _____,)

Since appellant did not testify at trial and no other defense witness offered any testimony relative to the consent or lack of consent by the victim, it is to appellant's written statement given to investigating police officers that attention must be directed to determine if any merit exists as to appellant's assertions on this appeal.

■ Appellant had the burden of injecting the issue of mistaken belief based upon the consent of the victim. A defense of mistaken belief is a special negative defense. *State v. Butler,* 665 S.W.2d 41, 45 (Mo.App.1984). Such defense is prescribed by statute, § 562.031.1, RSMo 1978, which reads: "A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact or law unless such mistake negatives the existence of the mental state required by the offense."

Appellant is quite correct that MAI requires the submission of the above instructions, but it is necessary from the facts and circumstances of each case to determine if there is sufficient evidence to support the instructing of a jury upon a special negative defense. The Notes on Use to MAI–CR2d 20.02.1 and MAI–CR2d 20.08.1 advise as to how the instructions are to be submitted if applicable.

However, before it is required that such instructions be given, a special negative defense must be "supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt." *State v. Stiers,* 610 S.W.2d 83, 84 (Mo.App.1980). *See also* Notes on Use to MAI–CR2d 2.04. It must be noted also that the defendant's burden of injecting the issue is not met "by statements of the defense which self-serve, but nothing more." *Butler* at 45.

Throughout the trial, the victim testified, both on direct and cross-examination, as to her protest against appellant's advances and that she did not consent to the acts committed by appellant. As noted above, the determination of this issue turns upon whether appellant's written statement to police properly injected the issue of a special negative defense. The critical portions of appellant's statement are as follows:

Appellant advised police that the victim "dabbed" his eye and "I started making out with ____ and asked her to pull down her pants." Appellant further stated that he started "making out" with the victim. Thus far, there is nothing offered by appellant that the victim consented to appellant's actions. In contrast, the victim testified that appellant "kept trying to kiss [her]" as he got on top of her. The victim's testimony further established her unwillingness to engage in sexual intercourse with appellant by her refusal to pull down her pants. Further, appellant's statement reveals that the victim's opposition to his advances was known to appellant in that while he was on top of her, she insisted that appellant stop his advances. In his statement, appellant told police that he, in turn, told the victim, "Listen Bitch, you either do or you don't." Appellant's statement also disclosed that the victim hit him in the leg with a spoon. The victim's testimony was in her resistance in that she "stabbed" appellant in the back with the handle of a spoon.

The evidence revealed that in the conversation between the victim and appellant that appellant assured the victim he was not going to rape her. The testimony of the victim and appellant's statement reveals that appellant's attitude toward the victim changed and he then demanded that the victim take off her pants. There is nothing within appellant's statement that reveals the victim's consent to remove her pants.

Appellant directs attention to a comment made by the victim, which occurred after the rape and sodomy and while the victim was waiting the arrival of the taxi. The victim stated, "I'm trying to figure whether or not I've been raped." From this statement, appellant concludes that he could have a belief that the victim had consented. Appellant's conclusion is in error. In the first instance, the statement,

having been made after the criminal acts, has no relevancy regarding the victim's or the appellant's state of mind during the actual commission of the criminal acts. The victim, when quizzed about this statement, testified that she "didn't want him (appellant) to know that I thought I had been raped because he could keep convincing me that I wasn't raped and he wouldn't think, well she thinks positive she's been raped." The victim's statement shows her state of mind in confronting appellant's conversation after the rape and sodomy, and it cannot be construed, contrary to appellant's assertion, that appellant could have reasonably believed that the victim consented to the acts of appellant.

Appellant broadens his argument to say that he was entitled to an acquittal even if he had recklessly disregarded the victim's opposition and protests and thus unreasonably believed that the victim was consenting. This position is obvious from the appellant's assertions that the above referenced instructions were not given.

What appellant's argument illustrates is the absurdity in both MAI–CR2d 2.37.1.2 and the Notes on Use to that instruction. In simple terms, the instruction would conclude the fact that if an attacker chose to ignore the protests and resistance of a victim and unreasonably believed that the victim was consenting, the accused would be entitled to an acquittal. The absurdity arises within Note 5 to MAI–CR2d 2.37.1 which declares, "all other mental states [*except criminal negligence*] can be negatived by a belief (reasonable or not)." Rape and sodomy can be committed recklessly. *State v. Dighera*, 617 S.W.2d 524, 533 (Mo.App.1981). Fortunately, this is not the law. Our State Supreme Court, in the case of *State v. Beishir*, 646 S.W.2d 74, 79 (Mo. banc 1983) held, "it is incongruous to define forcible rape and forcible sodomy as being accomplished 'without that person's consent by the use of forcible compulsion' ... and yet authorize a verdict of not guilty upon the defendant's belief of consent, reasonable or not." The court went on to emphasize that if the Missouri General Assembly "intended that a belief reason-

able or not, [that] the victim consented be a defense, § 566.020.1 would have been unnecessary."

The problem that exists is that MAI–CR2d 2.37.1.2 and the Notes on Use pertaining thereto have not been revised to comply with the rule announced in *Beishir*. The only sensible basis for an instruction upon mistaken belief as to consent and as to its being a viable special negative defense is if the belief is a reasonable belief. The evidence herein does not support that appellant could have had at the time of both offenses a *reasonable* belief that his victim consented. The evidence, even that within appellant's own written statement, dispels that assertion.

This court is asked to find that the trial court committed plain error in its failure to sua sponte submit the above instructions. The record discloses no request by appellant for such instructions and further, as noted above, the evidence did not support the giving of said instructions. *Stiers, Butler, supra.*

When a reviewing court is asked to reverse upon an instructional error because of failure to give a mandatory instruction, and the review is for plain error, the reviewing court must be convinced that there resulted manifest injustice for support of reversal. *State v. McEntire*, 574 S.W.2d 459, 460 (Mo.App.1978). Instructional error upon review includes a review of all instructions submitted and the consideration of all such instructions as a whole. *State v. Ballard*, 657 S.W.2d 302, 310 (Mo. App.1983). A review of all the instructions herein reveals that the jury was instructed it should acquit if it found beyond a reasonable doubt that appellant had believed his victim had consented to the acts. The additional instruction so instructed the jury without regard to reasonableness. Such instructions were submitted upon both the rape offense and the sodomy offense (deviate sexual behavior).

As a further note, the record discloses that defense counsel artfully and on appellant's behalf, argued the issue of consent

to the jury, even over the objection by the state.

 From the only source available, appellant's written statement to police, it cannot be said that the evidence was sufficient to properly inject the special negative defense based upon a mistake of fact defense which would negate an element of the crimes of rape and sodomy, to wit, the lack of consent by the victim.

Under the facts and circumstances of the present case, there was no error, plain or otherwise, upon the trial court's not giving sua sponte MAI–CR2d 2.37.1.2, paragraph four of MAI–CR2d 20.02.1 and paragraph four of MAI–CR2d 20.08.1.

Judgment affirmed.

All concur.