**STATE of Missouri, Plaintiff-Respondent,**

v.

**Michael Dean NUTT, Defendant-Appellant.**

**No. 13963.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 16, 1986.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James D. McNabb, Asst. Public Defender, Springfield, for defendant-appellant.

GREENE, Judge.

After jury-trial, Michael Dean Nutt was convicted of first degree burglary, § 569.-

make specific findings concerning the potential for lower rates as it is essential in determining public need.

160,[1] and sentenced to seven years' imprisonment.

The basis of the criminal charge was the state's contention that Nutt unlawfully entered an occupied mobile home located in a trailer park in Springfield, Missouri, and that he did so with the intent to steal.

At trial, Nutt admitted entering the trailer, but alleged that he had done so because he believed it was vacant, and only wanted to determine if it would be suitable for him to rent.

Among the points relied on in this appeal, Nutt contends that the trial court committed prejudicial error by refusing to submit his offered instruction "B" to the jury. The instruction reads as follows:

> One of the issues in this case is whether the defendant knew he was not licensed or privileged to enter upon the premises of Ray Fort at 1705C East Caravan. The State has the burden of proving beyond a reasonable doubt not only that defendant entered such premises but also that the defendant was aware that he had no license or privilege to do so. If the defendant believed he had license or privilege to so enter then he was not aware he had no license or privilege to so enter.

> If you find that the defendant believed he was licensed or privileged to enter or if you have a reasonable doubt as to whether he believed he had a license or privilege to enter or if you have a reasonable doubt as to whether the defendant was aware he was not licensed or privileged to enter then you must find the defendant not guilty.

Nutt asserts that his testimony outlined above was evidence that amounted to a special negative defense and, as such, entitled him to have instruction "B" read to the jury as part of the law of the case. We agree.

■ A special negative defense is a defense 1) upon which the defendant does not carry the burden of proof (self-defense, accident, honest claim of ownership or use of property, entrapment, etc.), 2) supported by enough evidence arising during the whole case to raise a reasonable doubt of defendant's guilt, and 3) which presents a positive fact or set of circumstances, as distinguished from a bare denial or converse, which, if found, would negate one or more essential elements of an offense (honest claim to ownership, for example), or which would, if found, constitute a legal defense (self-defense, for example). *See State v. Cummings*, 516 S.W.2d 49, 50 (Mo.App.1974).

■ Nutt's testimony that he believed the trailer home to be vacant, and that he entered it in an attempt to check on its suitability for rental quarters, constituted evidence which, if believed by the trier of fact, would negate an element of the crime of burglary (entry with the intent to commit a crime). In such cases, an instruction specifically setting out such a special negative defense must be given. MAI–CR2d 2.37.1.3, and its Notes on Use, para. 4. *See also* Rule 28.02(a). Failure to do so constitutes prejudicial error. *State v. Cummings*, supra, 516 S.W.2d at 50–51. *See also State v. Scott*, 649 S.W.2d 559, 561 (Mo.App.1983).

We have examined the other points relied on by Nutt in his appeal, including his argument that the evidence was insufficient to support the conviction, and find they have no merit.

The judgment is reversed and the cause remanded for new trial.

TITUS, P.J., concurs.

FLANIGAN, J., dissents and files opinion.

FLANIGAN, Judge, dissenting.

I respectfully dissent.

The principal opinion holds that the trial court erred in not submitting an instruction based on MAI–CR2d 2.37.1.3, a claim of "mistaken belief." The principal opinion

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

cites *State v. Cummings*, 516 S.W.2d 49 (Mo.App.1974), and *State v. Scott*, 649 S.W.2d 559 (Mo.App.1983), in support of its holding. Neither of those cases is factually similar. In *Cummings* the defendant was charged with stealing cattle and his testimony was that he bought the cattle from a person whom he believed to be the owner. This court held that the evidence required the giving of an instruction submitting "the supported defense of purchase." In *Scott* the defendant was found guilty of forcible rape and there was evidence to support his defense that the victim consented. The court held it was error not to give an instruction submitting that defense.

In my view there was insufficient evidence to require the trial court to give Instruction B tendered by the defendant. It should be noted that if the evidence was sufficient to require the giving of the instruction, the trial court had the duty to give it whether or not the defendant requested that it be given. Rule 28.02(a) requires that instructions "in the 2.00 Series" be given whether requested or not, where applicable under the law to the facts. See *State v. Chevalier*, 623 S.W.2d 42, 45 (Mo.App.1981).

In *State v. Quisenberry*, 639 S.W.2d 579 (Mo. banc 1982), and in *State v. Butler*, 665 S.W.2d 41 (Mo.App.1984), the defendant was convicted of burglary in the second degree. In *Quisenberry* the defendant was also convicted of stealing. In both cases the defendant asserted, on appeal, that the trial court erred in not instructing the jury upon the special negative defense of "claim of right." In each case that assertion was rejected.

Although the burglary involved in *Quisenberry* and *Butler* was burglary in the second degree, § 569.170, and the instant offense is burglary in the first degree, § 569.160, the mental state is the same for both offenses. As applicable here, that mental state consists of knowingly entering unlawfully a building or inhabitable structure for the purpose of committing a crime therein. The instant offense was burglary in the first degree, rather than burglary in the second degree, because, at the time of defendant's entry into the trailer, the owners, Mr. and Mrs. Fort, were present in it.

In *Quisenberry* one Hook, defendant's accomplice, entered the house of Hook's uncle and removed some pelts from a freezer. Defendant and Hook sold the pelts and divided the proceeds. Hook testified that he took the pelts believing that he had a right to do so because his uncle owed him some money. Defendant testified that he was asleep at the time the pelts were taken and that he participated in the sale only after Hook had explained to him that Hook had taken the pelts because of the debt.

The supreme court held that the trial court did not err in failing to instruct the jury on the special negative defense of "claim of right" created in § 570.070, set forth below.[1]

The court said that defendant failed to inject the issue of *his own belief* that Hook had a right to take the pelts because there was no evidence by either side that defendant assisted Hook in the belief that Hook had a right to take the pelts. The state's evidence showed that defendant aided Hook knowing that the pelts were stolen and defendant's evidence showed that he was asleep and unaware of any appropriation.

The supreme court also held that defendant was not entitled to the "claim of right" instruction on the theory that *Hook* had an honest belief that he had a right to take the pelts. The court conceded that if Hook took the pelts under an honest claim of right, a finding of that fact would preclude a finding that Quisenberry was guilty of

---

1. 570.070. 1. A person does not commit an offense under Section 570.030 [stealing] if, at the time of the appropriation, he

(1) Acted in the honest belief that he had the right to do so; or

(2) Acted in the honest belief that the owner, if present, would have consented to the appropriation.

2. The defendant shall have the burden of injecting the issue of claim of right.

stealing or entering the building with the intent to steal. The court held, however, that defendant did not inject the issue of Hook's claim of right and thus there was no error in failing to instruct on the special negative defense.

The only evidence of Hook's claim of right were statements by Hook that he believed he had a right to take the pelts. The court said, at p. 584:

"If the unadorned self-serving statements of the defendant or principal were sufficient to 'inject the issue,' there would be virtually no evidentiary burden on the defendant. *To warrant submission of the claim of right defense, there must be, apart from testimony of the defendant or principal as to his subjective belief, sufficient evidence to enable the court to infer that the relevant person honestly held that belief.*" (Emphasis added.)

The court also said, at p. 585:

"The naked assertion of an honest belief in a legal right, *unsupported by any evidence of facts or circumstances from which such a belief might reasonably be inferred,* is insufficient to satisfy the defendant's burden of injecting the issue of claim of right under § 570.070." (Emphasis added.)

Although § 570.070 refers to § 570.030 which deals with stealing, the supreme court, in *Quisenberry*, said at p. 582, fn. 4:

"Section 570.070.1(1) provides that a person does not commit the crime of stealing if he takes property under an honest claim of right. It follows that an *honest* claim of right is also a defense to a charge of burglary based on entry of a building with the intent to steal." (Emphasis added.)

In *Butler*, supra, the building burglarized was a storage building owned by Na-

tional Byproducts. The evidence showed that defendant went to the premises with one Wright, who was a former employee of National Byproducts. The defendant testified that he accompanied Wright to the premises for the purpose of getting a sawhorse. Wright opened the doors to the building, which had been ajar two or three feet, and defendant backed the truck into the building. Defendant had not inquired of Wright whether Wright had permission to enter the premises and cart the sawhorse away.

On appeal the defendant contended that the trial court erred in not submitting an instruction based on MAI–CR2d 2.37.1.3 and .4. Defendant claimed that the evidence showed that he was an unwitting participant and that neither he nor Wright knew that "they acted on the National Byproducts premises without permission."

The court of appeals pointed out that the "mistaken belief of fact or law" provision of § 562.031, set forth below,[2] is the basis for MAI–CR2d 2.37.1. The court, at p. 45, said: "[§ 562.031] imposes upon a defendant the burden to inject the issue of mistaken belief. That burden is not met by statements of the defense which self-serve, but nothing more."

The court pointed out that *Quisenberry* involved a "claim of right" under § 570.-070. At p. 45 the court said:

"The claim of *mistaken belief,* asserted here, and that of *claim of right,* adjudicated in *Quisenberry* are akin. Each goes to negative a mental state essential for conviction, and each imposes upon the defendant the burden to inject the issue. The barren statements by defendant Butler that there was no reason to suspect the incursion onto the premises and into the building to remove the property was without permission and that he had no intent to steal do not suffice as

---

**2.** Section 562.031, Ignorance and Mistake, provides:

    1. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact or law unless such mistake negatives the existence of the mental state required by the offense.

**3.** The burden of injecting the issue of reasonable belief that conduct does not constitute an offense under [subdivision] (1) ... is on the defendant.

substantive evidence of mistaken belief. The evidence that the doors were closed and locked, that none of the management had given Wright permission to enter or to take any property, that none of the property inside the building or taken by Wright was his possession, the statement by the defendant [admitted]: 'I ain't going to do no time for taking junk,' all are substantial evidence of a knowing and unlawful entry for the purpose of stealth (sic). There is no substantial evidence of conduct under mistaken belief. The issue was not submissible."

Under *Quisenberry* and *Butler* mere testimony by the defendant that he thought he had a right to enter the trailer because, in the language of the principal opinion, "he believed it was vacant, and only wanted to determine if it would be suitable for him to rent," would be insufficient to require the giving of Instruction B in the absence of other evidence that the belief was "honest." In the language of *Quisenberry*, there must be "sufficient evidence to enable *the court* to infer that [Nutt] honestly held that belief."

As stated in *State v. Hontz*, 655 S.W.2d 590, 592 (Mo.App.1983), a stealing case, "[t]he defendant's burden is to adduce evidence of facts from which, in the context of the entire case, the honesty of the defendant's belief can reasonably be inferred."

Defendant, the sole defense witness, testified that he came to the trailer court to visit the people in trailer 37. That trailer was occupied by the Forsts, friends of defendant, and defendant's girl friend, Thelma Goosey, had been staying there for a few days. The events took place about 9:30 a.m. Defendant testified that he had an argument with Thelma and left trailer 37 "to cool off." Defendant said he was "just milling around and I saw this trailer (trailer 38—the burglarized trailer), and I was thinking about renting it. It looked vacant to me so I went over and the door was ajar and I did open the door. I pulled the door open. It did have coat hangers on it but it was not tied tight. I had asked if anyone was there. I hollered for them and nobody answered. I did not have to pull on the door real hard because of the hangers."

The trailer was occupied by Ray Fort and his wife. Testifying for the state, Fort said that the defendant "broke in" and "was about two feet inside my door." Fort told defendant to get out and defendant did so. Fort testified that the door which defendant had opened was not locked but "was tightly secured." Fort said, "The door swelled last winter and I have been wiring it up with two heavy coat hangers."

There was evidence that although other trailers had outside indicia of being occupied—parked cars, tv antennas, clothes lines—the Fort trailer had no such signs of occupancy.

All of the testimony was to the effect that the door to the Fort trailer was locked, although inadequately, by means of the coat hangers on the inside. Defendant admitted that, to gain entry, he had to apply sufficient force to eliminate the locking effect afforded by the hangers. Although defendant, as a visitor to the occupants of trailer 37, had a right to be on the common areas of the premises, he had no right to enter other trailers even if they appeared unoccupied. Since the door to trailer 38 was secured on the inside by the hangers, perhaps the only reasonable or honest belief which defendant could entertain was that someone was then inside the trailer. In any event, the fact that he had to force the entry eliminated any reasonable or honest belief that he had a right to enter.

There was insufficient evidence, apart from the testimony of the defendant as to his subjective belief, to enable the trial court to infer that defendant honestly held the belief that he had a right to enter trailer 38.