**STATE of Missouri, Plaintiff-Respondent,**

v.

**Rollan Seegar STANLEY, Defendant-Appellant.**

No. 52213.

Missouri Court of Appeals, Eastern District, Division Two.

July 28, 1987.

Motion for Rehearing and/or Transfer Denied Sept. 2, 1987.

Application to Transfer Denied Oct. 13, 1987.

Henry B. Robertson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty of stealing after a court trial and sentenced as a prior and persistent offender to a term of fifteen years' imprisonment. He appeals; we affirm.

Defendant was initially arrested for trespassing in the Cass Information Systems office located on the tenth floor of the 1015 Locust Building in St. Louis. A "pat down" search conducted incident to that arrest revealed defendant had a woman's wallet containing the personal papers and credit cards of Mary Ann Levi, who worked on the eighth floor of the 1015 Locust Building and had left her purse near her typewriter when she went to lunch.

Defendant does not challenge the sufficiency of the evidence to support his conviction for stealing the credit cards; however, he contends, in his sole point on appeal, that the court erred in denying his motion to suppress evidence because the wallet and credit cards were obtained as a result of a search "incident to an unlawful arrest" for trespass. We therefore set forth the pertinent facts concerning defendant's arrest.

On November 20, 1985, Elsie Gould, an employee of Cass Information Systems, returned from lunch at approximately 11:40 and found defendant standing, slightly bent over, behind the receptionist's cubicle at the Cass office on the tenth floor of the 1015 Locust Building. The receptionist's cubicle, which is L-shaped and chest-high, obscured the receptionist's desk from view; however, it appeared as if defendant was searching through the desk drawers. When Gould came into the room defendant straightened up. Gould asked defendant if she could help him and he replied that he was looking "for a job or a job application." Gould informed him that he would have to go up to the twelfth floor and he thanked her. According to Gould's testimony at trial, defendant then turned towards the inner offices behind the reception area, but another Cass employee arrived from that direction, forcing defendant to turn around again and walk back out to the elevators. Although informed that his purported employment inquiry should be directed to the company's office on the twelfth floor, defendant allowed an elevator going up to pass by and got into one proceeding downward.

Gould and the other employee became suspicious and contacted the building manager, who relayed a description of defendant given to him by the employees to the security guard in the lobby and summoned the police. The security guard apprehended defendant fifteen to twenty minutes later as he exited from a stairwell and

took him to the building manager's office on the tenth floor, where defendant was identified by Gould as the man she had seen behind the receptionist's cubicle.

Nothing had been reported missing by the time police officer Archambault arrived; however, the building manager requested that defendant be arrested for trespass. Archambault talked with the witnesses and was informed that Gould had seen defendant bending over behind the receptionist's cubicle, apparently searching the desk drawers. Gould also said that after being told "the receptionist for the public [is] located on the twelfth floor" and "this [is] a private office, not open to the public," defendant did not exit, but instead "started to walk down a hallway that led to inner offices where he was met" by the other Cass employee. Defendant then left the office suite and proceeded to take the down elevator, which he exited prior to reaching the first floor lobby. Based upon this information, Archambault arrested defendant for trespass and conducted the "pat-down" search which disclosed the stolen wallet and credit cards.

Defendant was charged with stealing and filed a motion to suppress the evidence pertaining to the credit cards and wallet. He waived his right to trial by jury and agreed that the motion to suppress could be taken with the case. Prior to finding defendant guilty, the court denied defendant's motion. We believe that defendant's arrest for trespass was not "unlawful" and the court did not err in admitting the evidence obtained during the search.

Defendant was arrested for trespass in the first degree, a class B misdemeanor which is committed when "the actor *either knowingly enters or remains unlawfully in a building or inhabitable structure* or upon real property." *State v. Butler,* 665 S.W.2d 41, 44 (Mo.App.1984); § 569.140, RSMo 1986.

It has long been established that "police officers of the City of St. Louis are authorized to arrest without warrant any person whom they have reasonable grounds to believe has committed a misdemeanor even though such does not occur in the presence of the officer." *State v. Vollmar,* 389 S.W.2d 20, 24 (Mo.1965). *See also,* § 84.-090, RSMo 1986.

We explained in *State v. Jackson,* 686 S.W.2d 21 (Mo.App.1985), that:

Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed a crime. We determine whether there was probable cause *based upon the facts known to the police at the time.* The determination is made upon practical considerations of everyday life, on which reasonable persons act, not the hindsight of legal technicians.

*Id.* at 23 (citations omitted) (emphasis ours).

Defendant argues that probable cause to arrest him for trespass did not exist because he was licensed or privileged to enter the reception area. He contends that the room he entered was open to the public, and that, when asked to leave, he complied. We note that defendant was not tried for trespass, and we are concerned here only with the question of whether Officer Archambault had probable cause to arrest defendant for that offense based on the facts known to him at the time of the arrest.

■ Our examination of the record leads us to conclude that the court did not err in finding that Officer Archambault had probable cause to arrest defendant. Archambault testified he was informed that defendant had entered into a private office and was apparently searching through some desk drawers. Archambault was also told that defendant did not exit as requested, but proceeded down a hallway toward the inner offices. This information was a sufficient basis upon which to predicate defendant's arrest.

■ Assuming, for the sake of argument, that defendant is correct in asserting that the room he entered was open to the public, any privilege or license he pos-

sessed stopped short of the area set off by the cubicle, including the desk drawers, and did not extend to the interior offices. "A license or privilege to enter or remain in a building which is only *partly open* to the public *is not a license or privilege to enter or remain in that part of the building which is not open to the public.*" § 569.-010(8), RSMo. 1986 (emphasis ours). The information available to Archambault indicated that defendant exceeded the license he now claims. Defendant's point is without merit.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.